Opinion by Judge O’SCANNLAIN; Partial Concurrence and Partial Dissent by Judge PAEZ.
OPINION
O’SCANNLAIN, Circuit Judge:
We must decide whether a disabled teacher is á “qualified individual with a disability” under the Americans with Disabilities Act.
I
A
Patricia (“Trish”) Johnson, who had a history of depression and bipolar disorder, taught special education in the Boundary County School District No. 101 (“District”) in Idaho for a decade. In May 2007, Johnson entered into a standard teaching contract with the District requiring her “to have and maintain the legal qualifications required to teach” special education during the 2007-2008 school year. In Idaho, “[ejvery person who is employed to serve in any elementary school or secondary school in the capacity of teacher ... shall *563 be required to have and to hold a certificate issued under authority of the state board of education.” Idaho Code § 33-1201. The Idaho State Board of Education (“ISBE”) issued Johnson a teaching certificate valid from September 1, 2002 to September 1, 2007. Hence, Johnson’s teaching certificate was set to expire around the start of the 2007-2008 school year.
To renew her certificate, Johnson was required to complete at least six semester hours of professional development training, at least three of which had to be for college credit, during the five-year period that her certificate was valid. Idaho Admin. Code § 08.02.02.060.03. During this period, Johnson completed a number of courses toward renewal of her certificate; however, by the summer of 2007, she was still short the required three semester hours of college credit. According to Johnson, she had taken “much more than just three hours” of college-level courses by the start of the summer but had not received any credit because she never paid for the courses.
However, during that summer Johnson experienced a major depressive episode that rendered her unable to take any college courses. Shortly before classes resumed in the fall, Johnson met with the District Superintendent, Dr. Don Bartling, and explained that her certificate would soon expire because she had failed to complete the three college credits. Superintendent Bartling informed Johnson that she would need to petition the District’s Board of Trustees (“Board”) to apply for provisional authorization from the ISBE to teach without a certificate during the upcoming school year.
School districts in Idaho could apply for provisional authorization to hire teachers who lacked the appropriate certification by submitting a letter of request signed by the superintendent and chair of the board of trustees explaining the need for provisional authorization, “outlining the ‘good faith effort’ the district made in attempting to hire someone with appropriate certification,” and specifying the teacher’s qualifications. Upon ISBE approval, the teacher would be allowed to teach for a nonrenewable one-year term.
Johnson appeared before the Board on September 6, 2007, and requested that the Board apply for provisional authorization for her to teach during the school year. The Board voted to deny the request. According to the Chairman of the Board, Melanie Staples, the reason for the denial was that Johnson “had five years to get those three credits and didn’t approach administration until just before school started where her certificate was up.” Staples testified that the Board applied for provisional authorizations only when there was an open position but no certificated teachers available. Because there were two certificated special education teachers available to teach in the District, one of them was hired to fill in for Johnson.
The Board mailed a notice of possible nonrenewal of Johnson’s teaching contract for the 2007-2008 school year to Johnson on October 1, 2007. Two weeks later, the Board held a hearing to determine whether Johnson had violated the terms of her contract by allowing her teaching certification to lapse. Johnson was represented by counsel at the hearing and given the opportunity to testify and to present evidence. Johnson testified at length about her history of mental illness, as well as how her depressive episode during the summer of 2007 had prevented her from completing the required college credits. At the conclusion of the meeting, the Board decided to “stand on [its] previous decision” not to seek provisional authorization because of “Ms. Johnson’s lack of *564 action over the last five years.” Consequently, Johnson was terminated, and the substitute teacher filling in for her was hired on a full-time basis.
B
On January 12, 2009, Johnson filed a complaint against the Board in state court alleging statutory and constitutional due process violations, breach of contract, and disability discrimination in violation of the Idaho Human Rights Act (“IHRA”), Idaho Code § 67-5909; the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.; and the Americans with Disabilities Act of 1990 (“ADA”), 42 U.S.C. § 12101 et seq. The Board removed the action to the district court, which entered summary judgment in the Board’s favor. This timely appeal followed.
II
The sole claims remaining on appeal are the disability-discrimination claims.[1] Johnson contends that the district court erred in concluding that she was not a “qualified individual with a disability” within the meaning of the ADA.
A
Title I of the ADA prohibits “discriminatfion] against a qualified individual with a disability because of the disability of such individual in regard to ... the hiring, advancement, or discharge of employees.” 42 U.S.C. § 12112(a) (2007).[2] Thus, to prevail on her disability-discrimination claims, Johnson “first must show that she is a ‘qualified individual with a disability.’ ”[3] Fredenburg v. Contra Costa Cnty. Dep’t of Health Servs., 172 F.3d 1176, 1178 (9th Cir.1999). Moreover, she must show that she was “qualified” at the time of the alleged discrimination.[4] See Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104,1112 (9th Cir.2000).
The ADA defines “qualified individual” as “an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.” [5] 42 U.S.C. § 12111(8). The Equal Employment Opportunity Commission (“EEOC”), the agency to which Congress delegated authority to implement Title I of the ADA, see id. § 12116, has promulgated a regulation expanding this definition, see *565 Equal Employment Opportunity for Individuals with Disabilities, 56 Fed.Reg. 35,-726, 35,735 (July 26, 1991). The EEOC regulation provides that a “qualified individual with a disability” is one “who satisfies the requisite skills, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position.” 29 C.F.R. § 1630.2(m) (emphasis added). We have previously adopted the EEOC’s two-step inquiry as the test for whether an individual is qualified within the meaning of the ADA. See Bates v. United Parcel Serv., Inc., 511 F.3d 974, 990 (9th Cir.2007) (en banc).
B
The Board does not contest that Johnson was physically and mentally capable of performing the functions of a special education teacher at the time it denied her request for provisional authorization. The Board contends, however, that Johnson’s lack of legal authorization to teach in Idaho rendered her unqualified pursuant to the first step of the two-step qualification inquiry. Johnson responds that we must consider reasonable accommodation in determining whether she satisfied the job prerequisites. Because Johnson could have obtained legal authorization to teach had the Board granted her request for accommodation, she contends that she met the first step.
Initially, we note that the first step of the qualification inquiry, unlike the second step, contains no reference to reasonable accommodation. If the EEOC had intended to require employers to provide reasonable accommodation to ensure that disabled individuals can satisfy the job prerequisites, in addition to the essential job functions, it presumably could have said so in the regulation. That the EEOC declined to include any reference to reasonable accommodation in the first step suggests that such omission was deliberate. See Fedorenko v. United States, 449 U.S. 490, 512, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981).
Our reading is supported by the EEOC’s interpretive guidance on Title I (“Guidance”). In discussing the qualification inquiry, the Guidance explains that “[t]he first step is to determine if the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.” 29 C.F.R. Pt. 1630, App. to § 1630.2(m). Hence, “the first step in determining whether an accountant who is a paraplegic is qualified for a certified public accountant (CPA) position is to examine the individual’s credentials to determine whether the individual is a licensed CPA.” Id. Absent from this discussion is any mention of a requirement that the employer consider whether the individual could become a licensed CPA with reasonable accommodation.
According to another section of the Guidance, “the obligation to make reasonable accommodation is owed only to an individual with a disability who is qualified within the meaning of § 1630.2(m) in that he or she satisfies all the skill, experience, education and other job-related selection criteria.” 29 C.F.R. Pt. 1630, App. to § 1630.9(a). The Guidance further provides that “[a]n individual with a disability is ‘otherwise qualified’ ... if he or she is qualified for a job, except that, because of the disability, he or she needs a reasonable accommodation to be able to perform the job’s essential functions.” Id. Such statements make clear that unless a disabled individual independently satisfies the job prerequisites, she is not “otherwise quali *566 fied,” and the employer is not obligated to furnish any reasonable accommodation that would enable her to perform the essential job functions.
The Guidance then provides the following example to illustrate when the duty of reasonable accommodation would be triggered:
For example, if a law firm requires that all incoming lawyers have graduated from an accredited law school and have passed the bar examination, the law firm need not provide an accommodation to an individual with a visual impairment who has not met these selection criteria. That individual is not entitled to a reasonable accommodation because the individual is not “otherwise qualified” for the position.
On the other hand, if the individual has graduated from an accredited law school and passed the bar examination, the individual would be “otherwise qualified.” The law firm would thus be required to provide a reasonable accommodation, such as a machine that magnifies print, to enable the individual to perform the essential functions of the attorney position, unless the necessary accommodation would impose an undue hardship on the law firm.
Id. (emphasis added). Again, the Guidance explicitly disclaims any requirement of providing reasonable accommodation to disabled individuals who fail to meet the job prerequisites on their own.[6]
C
The EEOC as amicus curiae points out that a different section of the Guidance provides that “selection criteria that are related to an essential function of the job may not be used to exclude an individual with a disability if that individual could satisfy the criteria with the provision of a reasonable accommodation.” 29 C.F.R. Pt. 1630, App. to § 1630.10(emphasis added). Thus, the EEOC asserts that reasonable accommodation must be considered under the first step of the qualification inquiry.[7]
The Guidance section cited by the EEOC pertains to challenges to “qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities.” See 42 U.S.C. § 12112(b)(6); 29 C.F.R. § 1630.10. We have previously observed, in the context of a challenge to an employer’s “facially discriminatory qualification stan *567 dard,” that “it would make little sense to require an ADA plaintiff to show that he meets a qualification standard that he undisputedly cannot meet because of his disability and that forms the very basis of his discrimination challenge.” Bates, 511 F.3d at 988, 990. If the employee succeeds in showing that the qualification standard “has the effect of discriminating on the basis of disability,” the burden then shifts to the employer to show that “the qualification standard is (1) ‘job-related,’ (2) ‘consistent with business necessity,’ and (3) that ‘performance cannot be accomplished by reasonable accommodation.’ ” Id. at 994-95 (quoting 42 U.S.C. § 12113(a)).
Here, however, Johnson does not challenge the Board’s legal authorization requirement as a discriminatory job prerequisite. Rather, the basis for Johnson’s discrimination claim is the Board’s failure to accommodate her disability, which is analytically distinct from a claim of disparate treatment or impact under the ADA. See McGary v. City of Portland, 386 F.3d 1259, 1265-66 (9th Cir.2004). Because Johnson does not allege, let alone show, that the Board’s requirement was discriminatory in effect, the Guidance section pertaining to discriminatory qualification standards is inapposite.[8]
Ill
In sum, an individual who fails to satisfy the job prerequisites cannot be considered “qualified” within the meaning of the ADA unless she shows that the prerequisite is itself discriminatory in effect. Otherwise, the default rule remains that “the obligation to make reasonable accommodation is owed only to an individual with a disability who ... satisfies all the skill, experience, education and other job-related selection criteria.” 29 C.F.R. Pt. 1630, App. to § 1630.9(a). Because Johnson does not allege that the Board’s legal authorization requirement was itself discriminatory, her failure to satisfy such requirement rendered her unqualified, and the Board was not required to accommodate her disability.[9]
The judgment of the district court is
AFFIRMED.

. Johnson does not contest the district court’s conclusion that her ADA claim is barred because she failed timely to file a charge with the Equal Employment Opportunity Commission. Hence, we consider only her Rehabilitation Act and IHRA claims, though we construe such claims as we would an ADA claim. See Boose v. Tri-Cnty. Metro. Transp. Dist. of Or., 587 F.3d 997, 1001 n. 5 (9th Cir.2009); Stansbury v. Blue Cross of Idaho Health Serv., Inc., 128 Idaho 682, 918 P.2d 266, 269 (1996).

. The ADA was amended by the ADA Amendments Act of 2008 ("ADAAA”), Pub.L. No. 110-325, 122 Stat. 3553 (2008). Because the AD AAA's effective date is January 1, 2009, 122 Stat. at 3559, and because we have determined that the ADAAA lacks retroactive effect, Becerril v. Pima Cnty. Assessor’s Office, 587 F.3d 1162, 1164 (9th Cir.2009) (per curiam), we rely on the version of the ADA in effect in 2007.

. For purposes of summary judgment, the Board does not contest that Johnson is disabled.

. Here, the discrimination alleged is the Board’s refusal to apply for provisional authorization, i.e., "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.” 42 U.S.C. § 12112(b)(5)(A).

. The "essential functions” of a job are defined as the "fundamental job duties,” not including "the marginal functions of the position.” 29 C.F.R. § 1630.2(n)(l).

. Johnson concedes that an individual who cannot satisfy the job prerequisites is generally not "qualified” under the first step of the qualification inquiry but contends that an exception exists "where the employer exercises significant control over an individual's ability to obtain job-related qualifications.” We disagree. See EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, No. 915.002 (Oct. 17, 2002), at 20 (“There is no obligation for the employer to assist the individual to become qualified. Thus, the employer does not have to provide training so that the employee acquires necessary skills to take a job.”); see also Williams v. United Ins. Co. of Am., 253 F.3d 280, 282 (7th Cir.2001) (holding that an employer is not required to provide a disabled individual "training that will equip her with the qualifications for the job ... that at present she lacks”).

. Our dissenting colleague suggests that we have not afforded sufficient deference to the EEOC's statutory and regulatory interpretations. We disagree. In fact, our conclusion rests on the EEOC's own regulation and interpretive guidance. See supra. We part ways on certain aspects of the EEOC’s litigation position only to the extent that they are off point (as when the EEOC invokes guidance that is irrelevant on this record) or at odds with the plain text of the regulation and interpretive guidance.

. Accordingly, we reject Johnson’s reliance on cases such as Bates and Rohr v. Salt River Project Agricultural Improvement & Power District, 555 F.3d 850 (9th Cir.2009), both of which involved challenges to discriminatory qualification standards under 42 U.S.C. § 12112(b)(6).

. In light of our conclusion, we need not consider the Board’s argument that the requested accommodation was unreasonable.