**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2669
_____

ROBERT M. NEWTON

v.

PENNSYLVANIA STATE POLICE,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 2-18-cv-01639)
Magistrate Judge:  Honorable Maureen P. Kelly
_____

Argued:  October 19, 2023

Before:  CHAGARES, *Chief Judge*, PHIPPS, and CHUNG, *Circuit Judges*.

(Filed: January 9, 2024)
_____

Nikki V. Lykos            **[ARGUED]**
Colleen E. Ramage
RAMAGE LYKOS
525 William Penn Place, 28th Floor
Pittsburgh, PA 15219

*Counsel for Robert M. Newton*

Nicole J. Boland          **[ARGUED]**
Pennsylvania State Police
Office of Chief Counsel
1800 Elmerton Avenue
Harrisburg, PA 17110

*Counsel for the Pennsylvania State Police*

OPINION[*]

PHIPPS, *Circuit Judge*.

After being forced to resign from his position as a Pennsylvania State Trooper once he was eligible for retirement, Robert Newton added a claim for wrongful termination to a pre-existing discrimination lawsuit that he had brought against his former employer, the Pennsylvania State Police. That additional claim for disability discrimination under § 504 of the Rehabilitation Act as codified, *see* 29 U.S.C. § 794, was the only count on which he succeeded at trial in the District Court, which had subject-matter jurisdiction over his claims. *See* 28 U.S.C. § 1331. Still, Newton won big. A jury awarded him $100,000 in compensatory damages, and the Magistrate Judge who presided over the trial by consent of the parties, *see id.* § 636(c), imposed the equitable remedies of back pay, front pay, prejudgment interest, and lost benefits. That equitable relief, which totaled over $1.65 million was not offset by the monthly pension benefit of approximately $5,500 that Newton began receiving upon retiring.

Through a timely appeal of that final decision, the State Police invoke the appellate jurisdiction of this Court to dispute its liability as well as the relief awarded. *See id.* § 1291. In challenging the liability finding, the State Police attack the jury instruction on an essential element of Newton's § 504 claim: his qualifications for his position. On *de novo* review of the legal correctness of that jury instruction, *see O'Brien v. Middle E. F.*, 57 F.4th 110, 117 (3d Cir. 2023), the District Court erred for the reasons below, and it is therefore

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

not necessary at this time to address the State Police's other challenges to the liability findings and the relief awarded.[1]

## BACKGROUND

In 1995, Robert Newton enrolled in the State Police Academy to become a Pennsylvania State Trooper. The academy was very strenuous physically, and it provided Newton with instruction on vehicle operation, weapons, and making arrests. After graduating from the academy in 1996, Newton became a Trooper with the Pennsylvania State Police, a state agency with statewide law enforcement responsibilities. Over the next five years, he served as a Patrol Trooper except for a year in which he was a fixed-wing pilot for the Aviation Patrol Unit.

But in September 2001, while he was employed as a Patrol Trooper assigned to the Troop D, Butler Patrol Unit, Newton experienced pain in his left arm and shoulder. The State Police placed him on limited duty status for a non-work-related injury, meaning that Newton was to perform "duties of a law enforcement officer as required inasmuch as they do not conflict with the limitations set forth by the state police medical officer." Trial Tr. at 68:5–8 (Nov. 8, 2021) (JA197). Shortly afterwards, he was diagnosed with Stage 4 metastatic osteosarcoma, a type of bone cancer. After undergoing chemotherapy for thirteen months, Newton had surgery in February 2002. Although the surgery was

---

[1] As to liability, the State Police also contest the District Court's holding that retaining Newton beyond twenty-five years would be a reasonable accommodation. The State Police's appeal further disputes three facets of the remedy award, starting with a challenge to compensatory damages. But through his attentive and forthright counsel, Newton concedes that due to intervening Supreme Court precedent, *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230, *reh'g denied*, 142 S. Ct. 2853 (2022), the compensatory damages award cannot be sustained as a matter of law. Next, the State Police contend that the District Court abused its discretion in declining reinstatement as a remedy. Finally, the State Police invoke equitable considerations to argue that awarding Newton front pay at the same time as he receives pension benefits is impermissible.

successful in removing the cancer, it left him with permanent limited use of his left arm and shoulder. For all but one week of that period, Newton took leave to receive treatment.

After returning to work, Newton could not "be exposed to physical confrontation," so he worked only in a limited capacity without any expectation of returning to full-duty work. *Id.* at 68:15. Under the Collective Bargaining Agreement with the State Police, that meant that, starting in May 2003, Newton was a permanent-limited-duty employee with a non-work-related disability. As a permanent-limited-duty Trooper with a non-work-related disability, Newton was not "guaranteed entitlement of continuing limited duty beyond the date that [he reached] twenty-five (25) years of creditable service." CBA art. 46, § 2 (JA582).[2]

Even with his physical limitations, Newton could perform tasks for the State Police. On his initial return to work, he assisted the Procurement and Supply Officer, abbreviated as 'PSO,' in ensuring that the troop had needed supplies and equipment. The PSO was a specialized position – meaning that it was open only to Troopers who had served in a patrol function for at least three years and who had qualifications beyond those required of Patrol Troopers. In August 2003, after the Trooper holding the PSO position for Troop D retired, Newton replaced him. Newton held the PSO position at the Butler barracks until his retirement in September 2020.

But in 2018, before his retirement, Newton sued the State Police. In his pleadings, he claimed that he was wrongfully denied promotion to the position of Corporal based on his disability in violation of § 504 of the Rehabilitation Act, *see* 29 U.S.C. § 794, among

---

[2] By its terms, the CBA treats troopers with work-related disabilities differently than those with non-work-related disabilities at twenty-five years of creditable service: those with work-related disabilities must be separated while those with non-work-related disabilities are not forced to retire but instead lose the guarantee of continued permanent limited duty status.

4

other federal and state laws.  While that suit was pending, the State Police forced Newton to resign because he had reached twenty-five years of creditable service.  Afterwards, Newton supplemented this complaint with a § 504 claim for wrongful termination.  *See* Fed. R. Civ. P. 15(d).  Only that claim and his § 504 failure-to-promote claim survived to trial.  The jury rejected the failure-to-promote claim and found the State Police liable only for wrongful termination in violation of § 504.

## DISCUSSION

An essential element of a § 504 claim is that a plaintiff be "otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer."  *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996); *see also Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979).  In construing that element, this Circuit has followed the two-step process set forth in the guidance from the Equal Employment Opportunity Commission regarding the implementing regulations for Title I of the Americans with Disabilities Act.  *See* 29 C.F.R. pt. 1630, app. § 1630.2(m) (2016) (offering commentary on 29 C.F.R. § 1630.2(m)); *McNelis v. Pa. Power & Light Co.*, 867 F.3d 411, 415 (3d Cir. 2017); *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir. 1998) (en banc).[3]  Under that guidance, the first step in the qualified-individual inquiry is to determine whether the plaintiff "satisfies the prerequisites for the position."  29 C.F.R. pt. 1630, app. § 1630.2(m); *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998); *see also Johnson v. Bd. of Trs. of Boundary Cnty. Sch. Dist. No. 101*, 666 F.3d 561, 565

---

[3] Although that guidance pertains to claims under the Americans with Disabilities Act, neither party disputes its applicability to § 504 claims.  *See Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (explaining that the Rehabilitation Act and Title I of the Americans with Disabilities Act are "to be interpreted consistently, and . . . have the same standard for determination of liability"); *Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 229 (3d Cir. 2000) (same).

(9th Cir. 2011).  The second step involves an assessment of the plaintiff's ability to perform "the essential functions of the position," with or without a reasonable accommodation. 29 C.F.R. pt. 1630, app. § 1630.2(m).

In cases involving nested positions – where eligibility for one position depends on holding another position, *see, e.g.*, *Simon v. St. Louis Cnty.*, 735 F.2d 1082, 1084 (8th Cir. 1984) – those two steps must be applied to both positions.  Consistent with the understanding that the Trooper PSO was a nested position, the State Police argued for a jury instruction asking whether Newton "can do the duties of a full-duty trooper" in addition to the instructions about Newton's ability to perform the essential functions of the PSO position.  Trial Tr. at 216:18 (Nov. 8, 2021) (JA345).  The Magistrate Judge noted that objection but declined to add such an instruction.

That was mistaken.  The factual issue of whether the Trooper PSO position was nested should have been sent to the jury for resolution.  Specifically, the Magistrate Judge should have instructed the jury to determine whether for a person to hold the PSO position and be compensated as a trooper (as opposed to as a civilian employee), that person must meet the qualifications for being a trooper, a PSO, or both.

Then, after directing the jury to resolve whether the position was nested, the instruction should have addressed Newton's ability to hold any identified position under the two-step inquiry for the otherwise-qualified element of a § 504 claim.  *See* 29 C.F.R. pt. 1630, app. § 1630.2(m).  So, in the absence of a stipulation by the parties, the jury should have been instructed to determine first whether Newton was qualified for any required position (trooper, PSO, or both) and second whether Newton could perform the essential functions of any such position (or positions) with or without reasonable

6

accommodations.[4]  *See Simon*, 735 F.2d at 1084–85.  But by not accounting for the potential nested nature of the Trooper PSO position, the instructions were inadequate as a matter of law.[5]

## CONCLUSION

For these reasons, we will vacate the judgment and remand the case for a new trial (without retaining jurisdiction during the pendency of the remand).

---

[4] If the nested nature of the Trooper PSO position is not disputed on remand, then subject to any stipulations by the parties, it would be necessary to instruct the jury to determine first whether Newton met the qualifications for being a trooper *and* a PSO and second whether he could perform the essential functions of *both* positions with or without a reasonable accommodation.

[5] Chief Judge Chagares would affirm the District Court's judgment because in his view the jury instructions were legally adequate and there was sufficient evidence for the jury to conclude that Newton was a "qualified individual able to perform the essential functions of a Trooper assigned to the position of Procurement and Supply Officer, with or without reasonable accommodations by his employer."  App. 554–55 (jury instruction).  The jury could have given weight to one of the "essential functions" factors: "[w]ritten job descriptions prepared before evaluating applicants for the job."  App. 557 (paraphrasing 29 C.F.R. § 1630.2(n)(3)(ii)).  Newton's PSO job description required him to "[p]erform[] other related duties and those duties of a law enforcement officer, as required, *inasmuch as they do not conflict with the limitations set forth by the State Police Medical Officer*."  App. 577 (emphasis added).  The job description thus expressly contemplates that a Trooper like Newton could still perform the essential functions of a PSO *with* medical limitations.  *See* PSP Br. 28 (conceding that Newton's job description "exempt[s Newton] from physical confrontation").  The majority's discussion of Trooper and PSO as potential standalone positions with independent requirements contradicts Newton's job description and complicates an inherently fact-based analysis, unnecessarily.