**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2621
_____


UNITED STATES OF AMERICA

v.

RICHARD ANTONIO HODGE, JR.,

                              Appellant
_____

On Appeal from the District Court of the Virgin Islands
(No. 3-14-cr-00001-001)
District Judge:  Honorable Curtis V. Gomez

Argued: December 15, 2016
_____

Before:  CHAGARES, JORDAN, and HARDIMAN, Circuit
Judges.

(Filed: September 6, 2017)

Richard F. Della Fera, Esq. (ARGUED)
Entin & Della Fera
633 South Andrews Avenue
Suite 500
Fort Lauderdale, FL 33301

      Counsel for Appellant

David W. White, Esq. (ARGUED)
Nelson L. Jones, Esq.
Office of United States Attorney
5500 Veterans Building, Suite 260
United States Courthouse
St. Thomas, VI 00802

      Counsel for Appellee

_____

OPINION
_____

CHAGARES, Circuit Judge.

A jury found Richard Antonio Hodge guilty of ten counts of federal and Virgin Islands offenses, including robbery, assault, firearms-related crimes, and reckless endangerment. Hodge appeals his conviction and sentence on the following grounds: double jeopardy, denial of his pretrial motion to substitute counsel, denial of his motion to strike three jurors for cause, admission of prejudicial evidence at trial, insufficiency of the evidence, and error in the jury instructions.

For the reasons that follow, we agree that Hodge's multiple convictions under 14 V.I.C. § 2253(a), a Virgin Islands firearms statute, violated his right against double jeopardy. Therefore, we will remand to the District Court to vacate the convictions as to the appropriate counts and for requisite resentencing. We will otherwise affirm.

I.

A.

On December 3, 2013, Asim Powell, an employee of Ranger American Armored Services ("Ranger"), was carrying a bag containing $33,550 in cash deposits from a K-Mart in St. Thomas in the U.S. Virgin Islands to a Ranger armored vehicle in the K-Mart parking lot. On his way, Powell met his supervisor Clement Bougouneau. While the two were standing in the parking lot, a man, whose face was partially covered, shot Powell in the back and attempted to seize the bag of money. Powell did not relent, and the man then shot him twice more, in the wrist and hip. The man then shot Bougouneau once in the groin and fled the scene with the bag. Latoya Schneider, an off-duty Virgin Islands police officer, happened to be at the shopping center at the time and recognized Hodge as the shooter. Hodge was later apprehended. Both Powell and Bougouneau survived the shootings.

On January 2, 2014, a fifteen-count Information was filed against Hodge in the District of the Virgin Islands:

- Count 1, Interference with Commerce by Robbery, 18 U.S.C. § 1951;

3

- Count 2, Use and Discharge of a Firearm During the Commission of a Crime of Violence (robbery), 18 U.S.C. § 924(c)(1)(A);

- Count 3, Use and Discharge of a Firearm During the Commission of a Crime of Violence (attempted murder of Powell), 18 U.S.C. § 924(c)(1)(A);

- Count 4, Use and Discharge of a Firearm During the Commission of a Crime of Violence (attempted murder of Bougouneau), 18 U.S.C. § 924(c)(1)(A);

- Count 5, Attempted First Degree Murder of Powell, 14 V.I.C. §§ 921, 922(a)(2), and 331;

- Count 6, Using an Unlicensed Firearm During Commission of a Crime of Violence (attempted murder of Powell), 14 V.I.C. § 2253(a);

- Count 7, Using an Unlicensed Firearm During Commission of a Crime of Violence (first degree assault of Powell), 14 V.I.C. § 2253(a);

- Count 8, Using an Unlicensed Firearm During Commission of a Crime of Violence (robbery of Powell), 14 V.I.C. § 2253(a);

4

- Count 9, First Degree Assault with Intent to Commit Murder (Powell), 14 V.I.C. § 295(1);

- Count 10, First Degree Assault with Intent to Commit Murder (Powell), 14 V.I.C. § 295(3) [sic];

- Count 11, First Degree Robbery of Powell, 14 V.I.C. §§ 1861 and 1862(1);

- Count 12, Attempted First Degree Murder of Bougouneau, 14 V.I.C. §§ 921, 922(a)(2), and 331;

- Count 13, Using an Unlicensed Firearm During Commission of a Crime of Violence (attempted murder of Bougouneau), 14 V.I.C. § 2253(a);

- Count 14, First Degree Assault with Intent to Commit Murder (Bougouneau), 14 V.I.C. § 295(1); and

- Count 15, Reckless Endangerment in the First Degree, 14 V.I.C. § 625(a).

Appendix ("App.") 13-28. The District Court dismissed Count 10 prior to trial because it contained an error.

B.

Hodge was represented by Federal Public Defender Omodare Jupiter. Prior to trial, Hodge indicated he wanted

5

substitute counsel, but none was arranged at that time.[1]  On the morning of the first day of trial, June 9, 2014, Hodge moved to substitute attorney Michael Joseph for Jupiter, and Joseph submitted a faxed motion to appear on Hodge's behalf.  Jupiter reported to the District Court that Hodge wished to have Joseph represent him at trial.

The District Court engaged in the following colloquy with Jupiter:

> THE COURT: Are you aware -- is there some conflict between you and your client?
> MR. JUPITER: There's no conflict that I --
> THE COURT: Any other substantial reason that you cannot represent Mr. Hodge?
> MR. JUPITER: No, Your Honor. The only issue --
> THE COURT: It's just a question of choice, then?
> MR. JUPITER: This is only a question of whether -- I think the only issue I want to make sure that the Court -- the record is clear, the only issue the Court raised is

---

[1] At a prior motions hearing, Jupiter alerted the District Court that Hodge wished to be represented by substitute counsel. However, the transcript of that hearing is devoid of any substantive discussion as to the rationale, timing, or other details of the request.

whether or not he has a right to his counsel of choice, Your Honor. And so no, I'm not aware of any conflict that I have with Mr. Hodge. I was not aware until Sunday, yesterday, that Mr. Joseph was going to be trying to enter his appearance in this case.

THE COURT: Okay. Are you communicating with your client?

MR. JUPITER: Yes, Your Honor.

THE COURT: Is your client communicating with you?

MR. JUPITER: Yes, Your Honor.

THE COURT: And you have no conflict with your client at this time, correct?

MR. JUPITER: Correct, Your Honor.

THE COURT: Is there any conflict of interest, are you representing some other entity, Ranger American, or have any relationship with anyone?

MR. JUPITER: Not at all.

THE COURT: I don't find there's any good cause for any continuance, which is the only way I think Attorney Joseph can come in and adequately represent the defendant in this case.

App. 37-39. Joseph confirmed to the Court that while he would prefer more time, he was ready to proceed with jury selection and that his only request was to begin opening statements the next morning. The District Court did not directly ask Hodge any questions. After the Government indicated its concern about Hodge's right to counsel, the District Court denied the

7

motion. The court noted that it did not "see any good cause for a continuance . . . [or] for substituting counsel," and concluded that the motion was "simply a matter of choice, and what the Court views what may come close to kind of tactically moving the trial around." App. 43-44. The court characterized Joseph's recitation as "at best . . . equivocal when it comes to his preparedness for trial," App. 42, and concluded that "a continuance would be required in the Court's view in order to allow Attorney Joseph to represent the defendant," App. 43.[2] The court then advised Hodge that his options were to proceed with Jupiter or to represent himself. Hodge opted to proceed with Jupiter as his counsel.

## C.

During jury selection, several prospective jurors revealed their relationships with witnesses or parties in the case. Hodge urged the District Court to excuse three prospective jurors for cause.

First, Hodge challenged Juror 18, who indicated she was a childhood friend of Bougouneau and that they speak occasionally when they see each other, especially at work. She stated that she works at a bank and that she has overheard employees of Ranger discussing the case.

Second, Hodge challenged Juror 59, who stated she knew both Bougouneau and Powell through working at a bank that uses Ranger for transporting money.

---

[2] Jury selection took place immediately after this colloquy regarding counsel. Opening statements began shortly after noon that same day.

8

Third and finally, Hodge challenged Juror 24, who stated that her father was killed 22 years earlier and that "it still hurts [her] because the criminals are out running." App. 60. Juror 24 also was acquainted with Schneider.

The court refused to excuse any of the three prospective jurors for cause on the basis that all three stated that they could be fair and impartial, and because "[i]t's a very small community." App. 67. Hodge then exercised his peremptory strikes to remove Jurors 18, 59, and 24 from the jury.

D.

Hodge's jury trial took place on June 9, 10, and 11, 2014. Below, we summarize the statements and evidence presented at trial that relate to the issues raised on appeal.

Both Powell and Bougouneau testified at trial, although neither could directly identify Hodge. Powell testified that while he was conversing with Bougouneau in the K-Mart parking lot, Bougouneau shouted "[w]atch out," and Powell felt a "sharp pain in [his] back." Supplemental Appendix ("Supp. App.") 18. Powell fell forward bleeding from the chest. Supp. App. 18. Next, Powell heard several more shots and "felt somebody pulling at the bag" of cash deposits from the K-Mart that he had in his hand. Supp. App. 18. Powell "tried to restrain by not letting go the bag," and "felt a shot in [his] hip." Supp. App. 18. He also felt a shot in his wrist. Supp. App. 19. Powell testified that two to three minutes elapsed between when he was shot and when the money bag he was holding was "wrestled" from him. June 9, 2014 Trial Tr. (D. Ct. Dkt. No. 66) at 112.

9

Bougouneau testified that he saw Powell leaving the K-Mart and approaching him. Bougouneau confirmed that he "saw the gun pull up behind Powell," and that he said "[l]ook out." Supp. App. 21. He testified that the assailant's hair and face were covered. Supp. App. 22; June 9, 2014 Trial Tr. at 143. Bougouneau testified that "by the time I tried to grab my gun, shots fired and I go down." Supp. App. 21. At some point, Bougouneau was shot. Supp. App. 20. Bougouneau then ran after the assailant along with Schneider. Supp. App. 24.

Schneider identified Hodge as the shooter. She testified that on the day of the crime, she was off-duty from her position as a Virgin Islands police officer and was working as a taxi driver when she saw Hodge, whom she knew as "Richie," in the K-Mart parking lot. The Government asked Schneider how long she knew Hodge. She responded:

> I've been a police [officer] for about nine years. I don't know him personally, but, you know, my experience from working in special ops and dealing with the guys in the area, town, country, and all the different housing communities and stuff. I gathered his name from, you know, my co-workers and stuff like that. But I don't personally know him.

App. 76. Schneider testified that her sister lives in the area and added, "I see him all the time." App. 76.

Schneider testified that she saw Hodge in a "slow jog" and that at the time, she thought to herself, "Oh, Richie found a job" because she saw that Hodge had a hat or cloth over his

10

face and assumed it was to cover it from dust. App. 75-76. The Government then asked Schneider how she knew Hodge was unemployed. She replied, "Well, I always see him on the corner or on the turf, hanging with a group of guys," and added that she had observed him "hanging" in the area for four or five years. App. 76, 80. Schneider testified that Hodge had "his hands in this big jacket" and that she found it "strange." App. 77. Schneider stated that when she turned to retrieve her service weapon, she heard "[m]ore than two" shots "ring off." App. 77. She testified that she next saw one of the victims falling, Hodge picking up a bag, and Hodge running with a gun in his hand. App. 77-78. Later, during closing statements, the Government referred to Schneider's characterization of Hodge as previously unemployed and that she at first believed he had found a job. Hodge did not object to Schneider's testimony or to the Government's statement during closing.

Schneider and Bougouneau stopped their pursuit of Hodge because of Bougouneau's gunshot wound. Other officers arrived and eventually found Hodge in a dense wooded area, only half-dressed. The officers recovered from the bushes nearby a tee shirt, a black ski mask, and the jacket identified by Schneider. Gunpowder residue was later found on the clothing. The ski mask had male DNA on it, but Hodge was excluded as a contributor to the DNA sample in the mask.

E.

The District Court instructed the jury before and after closing statements. In the jury instructions before the closing statements, the District Court explained:

11

The crimes charged in this case are serious crimes which require proof of the defendant's mental state or intent before he can be convicted. To establish mental state or intent, the government must prove that the defendant's actions were knowingly and intentionally done. The government is not required to prove that the defendant knew that he was breaking the law when he did the acts charged in the information. You may determine his mental state or intent from all the facts and circumstances surrounding the case. State of mind or knowledge ordinarily may only be proved indirectly, that is, by circumstantial evidence, because there's no way we can get inside to observe the operations of the human mind.

Supp. App. 50-51.

In instructing the jury as to Counts 3 and 4, the 18 U.S.C. § 924(c) counts relating to the attempted murders of Powell and Bougouneau, the court first stated:

Counts 3 and 4 charge that on or about December 3rd, 2013, the defendant used a firearm to commit attempted murder.

To find the defendant guilty of using and discharging a firearm during the commission of attempted murder, the government must prove each of the following essential elements beyond a reasonable doubt:

12

First, that the defendant committed an attempted murder as charged in either Counts 5 or 12 of the information.

Second, that during and in relation to the commission of that crime, the defendant knowingly used a firearm.

Third, that the defendant used the firearm during and in relation to the crime of attempted murder.

App. 90. The court paused to address an unrelated matter, and then repeated the instruction as to Counts 3 and 4. In the second iteration, the court did not specifically refer to "Counts 5 or 12 of the information." App. 91. It also replaced "knowingly used" with "knowingly discharged" in the second to last sentence of the instruction. App. 92.

The court then gave the jury instructions for Counts 5 and 12 for attempted murder. It stated:

To meet its burden of proof for the crime charged in Counts 5 and 12, the government must prove the following essential elements beyond a reasonable doubt:

First, that the defendant attempted to kill a human being.

Second, that the defendant acted willfully, deliberately and with premeditation.

13

> And third, that the defendant acted with malice aforethought.

App. 92-93. Next, the District Court specifically defined premeditation and malice aforethought:

> To premeditate a killing is to conceive the design or plan to kill.
>
> Malice aforethought may be inferred from circumstances which show a wanton and depraved spirit, a mind bent on evil mischief, without regard to its consequences. Malice aforethought does not mean simply hatred or particular ill will, but embraces generally the state of mind with which one commits a wrongful act. And it includes all those states of mind in which a homicide is committed without legal justification, extenuation or execution.

App. 93-94.

The court then gave jury instructions for Counts 6 and 13, the firearms offenses in violation of 14 V.I.C. § 2253(a) with respect to attempted murder:

> To sustain its burden of proof for the crime charged in Counts 6 and 13, the government must prove the following essential elements beyond a reasonable doubt:
>
> First, that the defendant knowingly used the firearm in question.

14

Second, that the defendant was not authorized by law to use the firearm in question.

And third, that the defendant used the firearm during the commission of an attempted murder.

App. 94-95.

## F.

The jury returned a mixed verdict. It acquitted Hodge of four counts: Count 4, the 18 U.S.C. § 924(c) offense as to the attempted murder of Bougouneau; Count 5, attempted first degree murder of Powell; Count 12, attempted first degree murder of Bougouneau; and Count 13, the 14 V.I.C. § 2253(a) offense of using an unauthorized firearm in commission of the attempted murder of Bougouneau. It convicted him of the remaining ten counts.

On September 16, 2015, the District Court entered a judgment of conviction and sentence as to Counts 1, 2, and 3 and a separate judgment and commitment as to Counts 6, 7, 8, 9, 11, 14, and 15. On Count 1 (Hobbs Act robbery of Powell), the court sentenced Hodge to seventy months of imprisonment. On Counts 2 and 3 (the § 924(c) counts related to the robbery and attempted murder of Powell), the court sentenced Hodge to a mandatory minimum of 300 months of imprisonment on

15

the second § 924(c) violation and 120 months of imprisonment for the initial violation,[3] to run consecutively.

As to the Virgin Islands offenses, the District Court sentenced Hodge to a fifteen-year general sentence on Counts 6, 7 and 8 — the Virgin Islands firearms offenses related to the attempted murder, first degree assault, and robbery of Powell, respectively. It sentenced Hodge to a five-year general sentence for Counts 9, 11, 14, and 15 — the first degree assault of Powell, first degree robbery of Powell, first degree assault of Bougouneau, and first degree reckless endangerment, respectively. Both the five- and fifteen-year general sentences were to run consecutively to each other and to all other sentences.

The District Court also issued an opinion on March 8, 2016 regarding Counts 2 and 3, the dual § 924(c) convictions, rejecting Hodge's position that the convictions were duplicative and that only one of the convictions could stand. The District Court also denied Hodge's motion for a new trial and motion to vacate in a written opinion dated April 15, 2016. Hodge filed a timely appeal.

---

[3] Because the firearm in this case was discharged, the mandatory minimum for the first § 924(c) offense is ten years. 18 U.S.C. § 924(c)(1)(A)(iii).

II.[4]

Hodge raises separate arguments as to why several counts of his conviction and his sentence should be vacated because they are multiplicitous and violate the Fifth Amendment's Double Jeopardy Clause.[5] The Fifth Amendment protects, inter alia, "against multiple punishments for the same offense imposed in a single proceeding," Jones v. Thomas, 491 U.S. 376, 381 (1989) (quotation marks omitted), and accordingly, prohibits multiplicity. We have observed that "[m]ultiplicity is the charging of a single offense in separate counts of the indictment. A multiplicitous indictment risks subjecting a defendant to multiple sentences for the same offense, an obvious violation of the Double Jeopardy Clause's protection against cumulative punishment." United States v. Kennedy, 682 F.3d 244, 254-55 (3d Cir. 2012) (citations omitted). The Supreme Court has noted that "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under

---

[4] The District Court had jurisdiction over this case under 48 U.S.C. § 1612 and 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

[5] Hodge also argues that a few counts of his conviction and his sentence should be vacated by operation of an analog of the Double Jeopardy Clause — title 14, section 104 of the Virgin Islands Code. Arguments implicating section 104 will be discussed infra. When we are tasked with interpreting a territorial law under the Virgin Islands Code and there is no controlling precedent on point, "it is our role to predict how the Supreme Court of the Virgin Islands would resolve this interpretive issue." United States v. Fontaine, 697 F.3d 221, 227 n.12 (3d Cir. 2012).

17

the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." Ohio v. Johnson, 467 U.S. 493, 499 (1984) (citations omitted). As a result, the sentencing discretion of the judicial branch is limited by the legislative branch in that courts must ensure that the punishment imposed upon a defendant does not surpass that prescribed by the legislature. See Missouri v. Hunter, 459 U.S. 359, 366 (1983).

In Blockburger v. United States, 284 U.S. 299 (1932), the Supreme Court provided a test to determine whether the legislature "intended that two statutory offenses be punished cumulatively." Albernaz v. United States, 450 U.S. 333, 337 (1981). The Court in Blockburger directed that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304. See Ianelli v. United States, 420 U.S. 770, 785 n.17 (1975) (explaining that the Blockburger test serves the "function of identifying congressional intent to impose separate sanctions for multiple offenses arising in the course of a single act or transaction"). However, the Blockburger test is merely one "rule of statutory construction;" it does not control "where, for example, there is a clear indication of contrary legislative intent." Albernaz, 450 U.S. at 340 (quotation marks omitted).

Generally, our review of double jeopardy and multiplicity rulings is plenary. See Kennedy, 682 F.3d at 255 n.8. However, double jeopardy claims that were not raised before the District Court are reviewed for plain error. United States v. Miller, 527 F.3d 55, 60 (3d Cir. 2008). Under plain

error review, we will "grant relief only if we conclude that (1) there was an error, (2) the error was 'clear or obvious,' and (3) the error 'affected the appellant's substantial rights.'" United States v. Stinson, 734 F.3d 180, 184 (3d Cir. 2013) (quoting Puckett v. United States, 556 U.S. 129, 135 (2009)). When these three prongs have been satisfied, we may exercise our discretion to correct the forfeited error. Id.

We address Hodge's double jeopardy claims in seriatim below and note where we conduct plain error review instead of plenary review.

A.

Hodge argues that his convictions under 18 U.S.C. § 924(c) and 14 V.I.C. § 2253(a) (the federal and Virgin Islands crime-of-violence firearms offenses, respectively) cannot both stand if they are based on the same predicate offense conduct. There are two sets of convictions that fall into this category: Counts 2 and 8, where Count 2 is the federal firearms offense and Count 8 is the local Virgin Islands firearms offense, both based on the robbery of Powell; and Counts 3 and 6, where Count 3 is the federal firearms offense and Count 6 is the local firearms offense, both based on the attempted murder of Powell. Because Hodge did not raise this issue before the District Court, but did not appear to have intentionally waived it, we review it for plain error. See United States v. Olano, 507 U.S. 725, 733-34 (1993).

As a preliminary matter, unlike a scenario where the dual sovereigns of a state government and the federal government pursue parallel prosecutions for the same conduct, "the Virgin Islands and the federal government are considered

19

one sovereignty for the purpose of determining whether an individual may be punished under both Virgin Islands and United States statutes for a similar offense growing out of the same occurrence." Gov't of the V.I. v. Brathwaite, 782 F.2d 399, 406 (3d Cir. 1986). This is because as a United States territory, the U.S. Virgin Islands "does not have independent sovereignty but derives such powers as its government possesses directly from congressional grant under article IV, section 3 of the federal Constitution." Gov't of the V.I. v. Dowling, 633 F.2d 660, 669 (3d Cir. 1980).

We therefore turn to the Blockburger test to analyze whether 18 U.S.C. § 924(c) and 14 V.I.C. § 2253(a) "constitute violations of two distinct statutory provisions," Blockburger, 284 U.S. at 304. The predicate offenses for Counts 2 and 8 (robbery)[6] and Counts 3 and 6 (attempted murder) are the same. As a result, we need only examine the other elements of the two statutes.

Because the federal and Virgin Islands firearms statutes each contain an element not found in the other, Counts 2 and 8 and Counts 3 and 6 are not multiplicitous and do not trigger double jeopardy protection. The Virgin Islands firearms statute, 14 V.I.C. § 2253(a) requires that any firearm that is the

---

[6] While the Information is not clear as to which robbery charge Counts 2 and 8 refer to, the jury instructions indicate that both referred to the Virgin Islands first degree robbery statute in Count 11, rather than to the federal Hobbs Act robbery in Count 1. App. 88-91, 96.

20

basis of the charge be "unauthorized."[7] The federal statute, 18 U.S.C. § 924(c), on the other hand, does <u>not</u> require that the firearm be unauthorized.[8]

---

[7] Title 14, section 2253(a) of the Virgin Islands Code provides, in relevant part:

> Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm . . . may be arrested without a warrant, and shall be sentenced to imprisonment of not less than ten years . . . except that . . . if such firearm or an imitation thereof was had, possessed, borne, transported or carried by or under the proximate control of such person during the commission or attempted commission of a crime of violence . . . then such person shall be fined $25,000 and imprisoned not less than fifteen (15) years nor more than twenty (20) years.

[8] Title 18, section 924(c) of the United States Code provides, in relevant part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years . . . . In the case of a second or

The federal statute also possesses requirements that the Virgin Islands statute does not. To prove a violation of 18 U.S.C. § 924(c), a reasonable jury must find that the firearm was a "real" one. See United States v. Lake, 150 F.3d 269, 271 (3d Cir. 1998); United States v. Beverly, 99 F.3d 570, 572 (3d Cir. 1996). However, section 2253(a) explicitly provides that even an "imitation" of a firearm used during a crime of violence triggers criminal liability. See United States v. Fontaine, 697 F.3d 221, 228 (3d Cir. 2012).

The offenses underlying Counts 2 and 8 contain at least one element that the other does not. The same applies to Counts 3 and 6. Therefore, under the Blockburger test, there was no double jeopardy when Hodge was convicted of both the federal 18 U.S.C. § 924(c) count and the territorial 14 V.I.C. § 2253(a) count based on the same predicate offenses.

B.

Hodge argues that the District Court erred in failing to dismiss one of the two federal convictions under 18 U.S.C. § 924(c). Hodge does not contend that the two convictions (Counts 2 and 3) violate the Blockburger test. Hodge Br. 51. Instead, he argues more generally that the Double Jeopardy Clause "prevent[s] the sentencing court from prescribing greater punishment than the legislature intended," United States v. Diaz, 592 F.3d 467, 470 (3d Cir. 2010) (quoting Hunter, 459 U.S. at 366), and that § 924(c) is at best ambiguous

> subsequent conviction under this subsection, the person shall . . . be sentenced to a term of imprisonment of not less than 25 years.

22

as to whether he can be charged and sentenced under both Counts 2 and 3.

Hodge contends that § 924(c) is ambiguous and can be read to mean that a single use, carrying, or possession of a firearm cannot support multiple prosecutions. He urges that we should apply the rule of lenity to vacate either Count 2 or 3 because the predicate offenses — one for robbery and one for attempted murder — are both based on a single use of his firearm in shooting Powell.

We disagree. We have not held, as Hodge maintains, that the unit of prosecution for a § 924(c) count is each use of the firearm regardless of how many predicate offenses are charged. Rather, we have held that "crimes occurring as part of the same underlying occurrence may constitute separate predicate offenses if properly charged as separate crimes. It follows that each may be a separate predicate for a § 924(c)(1) conviction." United States v. Casiano, 113 F.3d 420, 426 (3d Cir. 1997) (citations omitted).

In Casiano, we rejected the argument that "§ 924(c) was never intended to punish subsequent convictions arising out of a single criminal enterprise involving the same victim." Id. at 425. The defendant's co-conspirators in Casiano pistol-whipped the victim while carjacking him, held a gun to his head while the victim lay in the back of the stolen vehicle, and pistol-whipped him again in the car.[9] Id. at 423. The defendant

_____

[9] The assailants then shot at the victim twice after taking him to a remote location, but Casiano did not appear to have been charged based on the shooting. Casiano, 113 F.3d at 423.

23

was convicted of two counts of § 924(c), one based on carjacking and one based on kidnapping. Id. at 424. The Court held that the application of § 924(c) to both was appropriate because the statute refers to a second or subsequent "conviction, not criminal episode." Id. (quotation marks omitted) (citing Deal v. United States, 508 U.S. 129 (1993)). The same logic applies here, since the sequence of Hodge's actions closely parallels Casiano's and in both cases a firearm was employed multiple times to commit multiple predicate crimes.

Hodge next argues that our decision in Diaz, 592 F.3d at 474-75, requires that the rule of lenity be applied to vacate his second § 924(c) conviction. In Diaz, the defendant used a firearm multiple times to commit a single predicate act: possession with intent to distribute heroin. Based on this single predicate offense, he was convicted of two § 924(c) offenses. After surveying the opinions of our sister Courts of Appeals and the relevant legislative history, we concluded that the statutory text of § 924(c) was "susceptible of differing interpretations" as to the issues in that case, id. at 473, with the relevant unit of prosecution being either (1) the underlying predicate offense, or (2) each individual instance in which a defendant uses or carries a firearm throughout the duration of an underlying predicate offense. Id. at 471-72. Given this ambiguity, we concluded that application of the rule of lenity would be appropriate in that particular case and vacated one count of the defendant's two § 924(c) convictions. Id. at 474-75.

Hodge's reliance on Diaz is misplaced. Unlike the defendant in Diaz, who had two § 924(c) convictions on the basis of a single predicate crime, Hodge's two § 924(c)

24

convictions were based on two separate predicate offenses: robbery and attempted murder. The analysis regarding lenity in <u>Diaz</u> thus does not suggest its extension to this case. This is because regardless of what constitutes the unit of prosecution, Hodge engaged in multiple uses of a firearm to commit multiple crimes, albeit all during the same criminal episode.[10]

---

[10] Even if the unit of prosecution for § 924(c) were based on each use of a firearm rather than the underlying predicate offense, Hodge's argument would still fail because his characterization of Counts 2 and 3 as involving "use of a firearm once," Hodge Br. 44, is factually incorrect. Powell testified at trial that he was first shot and began bleeding from his chest before the assailant attempted to rob him of the money bag. Supp. App. 18-19. When Powell "tried to restrain by not letting go the bag," he then "felt a shot in [his] hip." Supp. App. at 18. Powell was subsequently shot a third time in the right wrist. Supp. App. at 19. Shooting Powell to rob him and then shooting him twice more when Powell refused to give up the money can rightly be understood on this record as constituting multiple "uses" of the firearm to commit different predicate crimes. See <u>United States v. Vichitvongsa</u>, 819 F.3d 260, 270 (6th Cir. 2016) ("Whether a criminal episode contains more than one unique and independent use, carry, or possession depends at least in part on whether the defendant made more than one choice to use, carry, or possess a firearm."); <u>United States v. Wilson</u>, 160 F.3d 732, 749 (D.C. Cir. 1998) ("[T]here may be circumstances in which such [multiple] offenses could support more than one § 924(c) charge — as where, for example, the evidence shows distinct uses of the firearm, first to intimidate and then to kill."). We therefore deem inapposite Hodge's citations to out-of-circuit cases regarding truly simultaneous offenses based on a single

25

This scenario was neither at issue in nor contemplated by the Diaz Court. To the contrary, the Diaz Court explicitly distinguished its particular factual scenario, reinforcing that Casiano would still control in a situation like that at issue here. See Diaz, 592 F.3d at 470 n.3 ("Casiano does not govern this case because the Government there charged more predicate crimes than § 924(c) violations."); see also United States v. Anderson, 59 F.3d 1323, 1334 (D.C. Cir. 1995) ("In circumstances in which a defendant displays or fires a gun on separate and distinct occasions, the government will often be able to charge those acts as separate § 924(c) violations linked to separate predicate offenses."). Hodge's argument — that a defendant commits only one § 924(c) violation despite multiple uses of a firearm to commit multiple crimes — is thus foreclosed by Casiano. For this reason and because our holding in Diaz does not alter that conclusion, we will affirm the judgment as to Counts 2 and 3.

---

use of a firearm. See, e.g., Vichitvongsa, 819 F.3d at 269-70 (vacating two of four § 924(c) convictions where the defendant — on two separate occasions — brandished a gun once to commit both Hobbs Act robbery and a drug trafficking crime simultaneously); United States v. Rentz, 777 F.3d 1105, 1107 (10th Cir. 2015) (en banc) (vacating one of two § 924(c) convictions where the defendant shot a gun once and the bullet hit two victims, killing one and injuring the other); United States v. Cureton, 739 F.3d 1032, 1036 (7th Cir. 2014) (involving a single act of pressing a gun to the victim's head in making both an extortion and ransom request).

C.

Hodge contends that Counts 6, 7, and 8, the Virgin Islands counts related to the use of an unlicensed firearm in violation of 14 V.I.C. § 2253(a), are multiplicitous because all three charges were predicated upon crimes committed with the same firearm during one continuous act. Hodge Br. 56-57. Hodge bases his contention on two theories: first, that 14 V.I.C. § 2253(a) only allows for one prosecution where there was one firearm used in a continuous act, and second, 14 V.I.C. § 104 forbids multiple punishments for the same action. Both theories have merit.

The Virgin Islands firearms statute criminalizes the unauthorized possession, bearing, transporting, or carrying of a firearm. It imposes additional penalties if the defendant also commits a "crime of violence." In Hodge's case, the three counts under section 2253(a) charge multiple predicate crimes of violence against Powell. Hodge asserts that only one count under section 2253(a) is permissible because he only possessed the firearm once. We must therefore determine whether a separate offense arises under section 2253(a) for each crime of violence during which a firearm was present, or for each instance of possessing, bearing, transporting or carrying the firearm, regardless of how many crimes of violence are committed (which is what Hodge urges us to conclude). To determine what the unit of prosecution is, we first look to the text of the statute. See Kennedy, 682 F.3d at 255.

We agree with Hodge and hold that the plain text of the statute indicates that the unit of prosecution refers to the fact that a defendant "has, possesses, bears, transports or carries" an unauthorized firearm. This is a crucial difference between

27

14 V.I.C. § 2253(a) and 18 U.S.C. § 924(c). The former criminalizes the unauthorized possession of a firearm for any purpose. The latter, in contrast, criminalizes the use, carrying, or possession of a firearm only if it is in furtherance of certain prescribed activity — here, a crime of violence. In the absence of a crime of violence, Hodge would not face a § 924(c) charge at all. He would still face, however, a charge under 14 V.I.C. § 2253(a) for possession of an unauthorized firearm.

The language of section 2253(a) regarding a crime of violence is structured as a sentencing enhancement and attaches to the possession offense in the previous clause. See 14 V.I.C. § 2253(a) (referencing "if such firearm" being "under the proximate control of such person during the commission or attempted commission of a crime of violence" (emphasis added)). In other words, Hodge already violated 14 V.I.C. § 2253(a) by virtue of possessing an unauthorized firearm, even if he did nothing else. His commission of a crime of violence can only enhance the sentence, and cannot serve as the basis for another prosecution for a firearms possession offense under section 2253(a). See United States v. Xavier, 2 F.3d 1281, 1291 (3d Cir. 1993) ("[Section 2253] provides punishment for unauthorized possession 'except that' a greater punishment applies for a defendant convicted of possessing a weapon during a crime of violence."); see also Fontaine, 697 F.3d at 229 ("It is thus the lack of authorization to have a firearm that stands as a prerequisite to criminal liability [under section 2253(a)]."). The plain meaning of the statute leads us to the conclusion that only one count under 14 V.I.C. § 2253(a) can be sustained under the facts of this case.

Moreover, 14 V.I.C. § 104 also forbids Hodge's multiple convictions under section 2253(a). Section 104 provides:

> An act or omission which is made punishable in different ways by different provisions of this Code may be punished under any of such provisions, but in no case may it be punished under more than one. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.

While the Double Jeopardy Clause "protects criminal defendants against multiple prosecutions or punishments for a single offense," section 104 "speaks to multiple punishments for the same act." Castillo v. People, 59 V.I. 240, 284 n.1 (2013) (Hodge, C.J., concurring). Section 104 thus "provides greater protections than the Double Jeopardy Clause" and "dictates that despite the fact that an individual can be charged and found guilty of violating multiple provisions of the Virgin Islands Code arising from a single act or omission, that individual can ultimately be punished for only one offense." Estick v. People, 62 V.I. 604, 620-21 (2015); see also Williams v. People, 56 V.I. 821, 821 n.9 (2012). We agree with Hodge that section 104 prevents multiple punishments under Counts 6, 7, and 8, all of which arise from a single act of having, possessing, bearing, transporting, or carrying an unauthorized firearm. See 14 V.I.C. § 2253(a).

Although the District Court imposed a general sentence for Counts 6 through 8, a "second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence."

29

Ball v. United States, 470 U.S. 856, 864-65 (1985). Rather, "[t]he separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. . . . Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment." Id. at 865 (noting the collateral consequences of deferred eligibility for parole, enhanced sentencing for recidivists for future offenses, social stigma, and impeachment of credibility); see also United States v. Ward, 626 F.3d 179, 185 n.8 (3d Cir. 2010) ("To the extent [our previous] cases can be read as permitting a general sentence on multiple convictions to cure a Double Jeopardy problem, the Supreme Court has since rejected such an approach." (citing Rutledge v. United States, 517 U.S. 292, 307 (1996)). We will therefore remand to the District Court to vacate two of the three convictions in Counts 6, 7, and 8. See United States v. Miller, 527 F.3d 54, 74 (3d Cir. 2008).[11]

D.

Hodge asserts that separate punishments for Count 7, a 14 V.I.C. § 2253(a) offense predicated on the offense of first degree assault, and Count 9, the predicate offense of first

---

[11] Hodge also argues that his convictions under Counts 6 and 7 violated the Double Jeopardy Clause because Count 7's predicate offense of first degree assault with intention to kill under 14 V.I.C. § 295(1) is the same offense as Count 6's predicate offense of attempted first degree murder under 14 V.I.C. §§ 921, 922(a)(2), and 331. Because we have already determined that Virgin Islands law allows only one of Counts 6, 7, and 8 to remain, we need not reach this argument.

30

degree assault, are not permissible under 14 V.I.C. § 104. He argues that because the predicate offense in Count 9 and the firearms offense in Count 7 arose from the "same act or omission," section 104 prevents him from being sentenced for both counts.[12]

We disagree. Hodge has already conceded in the proceedings below that "a conviction for a violation of 14 V.I.C. § 2253(a) . . . [and a predicate felony] are not multiplicitous, and that the local Legislature intended that the penalty for this crime should be in addition to the predicate felony." Hodge Sentencing Mem., (D. Ct. Dkt. 77, Feb. 18, 2015) at 3. Indeed, the statute explicitly provides that penalties "shall be in addition to" penalties for the predicate offense. 14 V.I.C. § 2253(a). The Virgin Islands Supreme Court has already ruled that section 2253(a)'s consecutive sentencing mandate does not conflict with section 104. Phillip v. People, 58 V.I. 569, 594-95 (2013) (citing Ward v. People, 58 V.I. 277, 286 (2013)); see also Fontaine v. People, 62 V.I. 643, 653-54 (2015). The court reasoned that "the Legislature intended to establish an exception to the general rule set forth in section 104, and allow individuals to be punished for both violating [the firearms offense] and the underlying crime of violence." Ward, 58 V.I. at 286. Therefore, because there was "a clear and unambiguous intent on the part of the Legislature . . . to

---

[12] This issue will be moot, however, if the District Court on remand vacates Count 7 pursuant to section II(C), supra. It is also unclear why Hodge only advanced this argument as to Counts 7 and 9, but not as to Counts 8 and 11, where the Virgin Islands firearms offense charged in Count 8 is predicated on the first degree robbery of Powell charged in Count 11.

31

require punishment for both of those offenses," statutes such as section 2253(a) do not conflict with section 104. Id.

E.

Hodge argues that the District Court did not heed the requirements of 14 V.I.C. § 104 when it imposed a five-year general sentence for Counts 9, 11, 14, and 15, but failed to stay the execution of punishment for all but one of the counts. The Government contends that the sentences for these counts do not fall under the purview of section 104 because they relate to multiple acts and multiple victims.

We agree with the Government. While Hodge is correct that section 104 requires not only that a concurrent sentence be imposed for related convictions, but also that the executions of punishment for all but one conviction arising from the same criminal act be stayed, see Williams, 56 V.I. at 821 n.9, there is no basis for doing so in this case because the multiple convictions for those four counts do not implicate section 104.

While the District Court appeared to consider section 104 generally during sentencing, it did not explicitly state that it was grouping together the four counts under section 104. App. 146 (imposing a five-year sentence on Counts 9, 11, 14, and 15 without reference to section 104); App. 133 (noting prior to imposing a sentence that, in general, "[t]he Court's position is to stay within the confines of . . . [section] 104"). Regardless of the court's intent, section 104 does not apply here because the four counts could not "aris[e] from a single act or omission." Estick, 62 V.I. at 621. The Virgin Islands Supreme Court has held that a "multiple-victim exception" to section 104 applies when there is "an act of violence that harms

32

or risks harming more than one person." Phillip, 58 V.I. at 593; see also Woodrup v. People, 63 V.I. 696, 723 (2015); Fontaine, 62 V.I. at 654. In Phillip, the court held that section 104 does not apply to convictions for first degree murder and first degree reckless endangerment, where the defendant's shooting of the gun killed a victim and "the act of firing created a risk of death to others" near the victim. 58 V.I. at 594. Here, Count 14, first degree assault of Bougouneau, relates to a different victim than Counts 9 (first degree assault of Powell) and 10 (first degree robbery of Powell). Count 15, first degree reckless endangerment, related to yet other victims in the vicinity.

A different question remains as to whether Counts 9 and 10 (where Powell is the victim for both counts) arose from the same act under section 104. We hold that they do not, since the assault and robbery were distinct acts where Hodge discharged his gun multiple times, with some break in the sequence. In Galloway v. People, 57 V.I. 693, 712 (2012), the Virgin Islands Supreme Court held that the defendant's convictions and sentences for driving under the influence and failure to stop at a red light did not violate section 104 because "his convictions for both offenses were not part of an indivisible state of mind or coincident error of judgment." Similarly, Hodge's decision to use his gun multiple times to assault and rob Powell was not "part of an indivisible state of mind." See also Francis v. People, 63 V.I. 724, 743 (2015) (holding that two counts of aggravated rape do not arise from the same act under section 104 because each can be "considered separately as two units of prosecution"); Webster v. People, 60 V.I. 666, 682 n.7 (2014) (holding that defendant's "actions in waking his mother to demand the keys and later taking the vehicle without her consent do not constitute 'a single act or omission' for the purposes of 14 V.I.C. § 104").

33

Thus, we hold that the District Court did not violate section 104 when it imposed a general sentence upon Hodge for his convictions on Counts 9, 11, 14, and 15.

## III.

Hodge contends that his Sixth Amendment rights were violated because the District Court denied his request for substitute counsel. We review a District Court's denial of a request for substitution of counsel and denial of a continuance for abuse of discretion. United States v. Goldberg, 67 F.3d 1092, 1097 (3d Cir. 1995); United States v. Kikumura, 947 F.2d 72, 78 (3d Cir. 1991).

A criminal defendant has a right to be assisted by counsel of choice under the Sixth Amendment. The right to counsel of choice, however, has limits. "[W]hen that choice comes into conflict with a trial judge's discretionary power to deny a continuance, the court will apply a balancing test to determine if the trial judge acted fairly and reasonably." Kikumura, 947 F.2d at 78.

Here, Hodge formally moved for a change of counsel moments before trial was scheduled to begin. The procedure for entertaining a substitution of counsel motion on the eve of trial is set forth in United States v. Welty, 674 F.2d 185, 187 (3d Cir. 1982):

> [T]he district court must engage in two lines of inquiry. First, the court must decide if the reasons for the defendant's request for substitute counsel constitute good cause and are thus sufficiently substantial to justify a continuance

of the trial in order to allow new counsel to be obtained. If the district court determines that the defendant is not entitled to a continuance in order to engage new counsel, the defendant is then left with a choice between continuing with his existing counsel or proceeding to trial pro se, thus bringing into play the court's second stage of inquiry.

The Welty court then provided examples of good cause, "such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with his attorney." Id. at 188; see also Goldberg, 67 F.3d at 1098.

Hodge's argument is only as to the first line of inquiry set forth in Welty. He contends that the District Court's failure to engage in a direct colloquy with him when examining the reasons for change of counsel was constitutional error. We conclude that the District Court did not abuse its discretion by denying the request without engaging in a direct colloquy with Hodge.

Our precedents after Welty command that "[e]ven when the trial judge suspects that the defendant's contentions are disingenuous, and motives impure, a thorough and searching inquiry is required." McMahon v. Fulcomer, 821 F.2d 934, 942 (3d Cir. 1987). Although the District Court's Welty step one inquiry in this case was directed at Hodge's original attorney instead of Hodge himself, Hodge has not demonstrated that this was an abuse of discretion. Jupiter, Hodge's public defender, confirmed that he had no conflict of interest with any party or witness, that there had been no breakdown of communication between himself and his client,

and that in fact, the two were still communicating. Hodge was present during this conversation and could have requested to be heard. He could have also spoken on this issue when the court asked him later about his understanding of his right to proceed pro se. Finally, his proposed substitute counsel, Joseph, was also present, given an opportunity to speak, and did not dispute Jupiter's version of events. Even now, Hodge has advanced no legitimate reason for his desire to substitute counsel justifying a continuance.

We do note that by only gathering information from counsel whom a defendant wishes to reject, but not the defendant himself, a trial court creates some risk of overlooking some latent, legitimate reason for substitution that is not articulable by his counsel. There is some support for this position in Welty, where we noted: "[i]f the reasons are made known to the court, the court may rule without more. If no reasons are stated, the court then has a duty to inquire into the basis for the client's objection to counsel and should withhold a ruling until reasons are made known." Welty, 674 F.2d at 188 (quoting Brown v. United States, 264 F.2d 363, 369 (D.C. Cir. 1959) (en banc) (Burger, J., concurring in part)). However, it is not the case that a trial court must ceaselessly pursue the inquiry until some satisfactory reason is given, since the very purpose of the inquiry is to determine whether any such reason exists.

Nor do we agree with Hodge that the failure to conduct a one-on-one colloquy with the defendant is itself reversible error.[13] This Court did not hold in Welty that such a colloquy

---

[13] Moreover, the District Court is required to consider "countervailing governmental interests" when faced with a last

between the judge and the defendant is required in every instance, and we do not require that now. Such a per se requirement would be encroaching into the province of the trial judge. We recognize that the District Court can ascertain whether good cause exists by using various sources, and we decline to require that in every instance, it must question the defendant directly. Therefore, the District Court did not abuse its discretion in denying the motion to substitute counsel.

IV.

Hodge challenges the District Court's refusal to strike three prospective jurors for cause. In particular, Hodge claims that two of the prospective jurors knew the shooting victims and the third harbored bias because her father had been murdered. "We review the district court's conduct of voir dire for abuse of discretion." Butler v. City of Camden, City Hall, 352 F.3d 811, 814 n.4 (3d Cir. 2003).

_____

minute request for substitution of counsel and a continuance. Goldberg, 67 F.3d at 1098. Joseph asked that opening statements take place the following morning. Although the requested continuance was a short one, it nevertheless risked disrupting the court's administration. The District Court also observed that Joseph was not fully ready for trial, after Joseph represented that he had received discovery materials from Jupiter just days before and would have preferred an extra week. For this additional reason, the District Court's balancing of various factors, including "the efficient administration of criminal justice; the accused's rights, including the opportunity to prepare a defense; and the rights of other defendants awaiting trial who may be prejudiced by a continuance," id., to deny substitution was not an abuse of discretion.

Hodge does not advance any claim that any of the jurors who were <u>actually</u> empaneled were biased, and therefore this claim fails.  We need not reach the question of whether the three potential jurors should have been stricken for cause because Hodge exercised his peremptory strikes, and none ultimately served on the jury.  "So long as the jury that sits is impartial . . . the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated."  <u>United States v. Martinez-Salazar</u>, 528 U.S. 304, 313 (2000) (quoting <u>Ross v. Oklahoma</u>, 487 U.S. 81, 88 (1988)).  Thus, Hodge cannot prevail.

## V.

We next turn to Hodge's trial-evidence related challenges on appeal.

## A.

Hodge first argues that the testimony of eyewitness Officer Schneider, in which she referred to her knowledge of him as unemployed, was irrelevant and prejudicial.  He also challenges the Government's closing statement, which referred to this aspect of Schneider's testimony.[14]

We hold that the admission of Schneider's testimony was not plain error.  Schneider, who was an off-duty police

---

[14] We review for plain error when, as here, there is no contemporaneous objection to admission of evidence or counsel's comments about evidence during a summation. <u>Langbord v. U.S. Dep't of Treasury</u>, 832 F.3d 170, 192 n.12 (3d Cir. 2016) (en banc); <u>United States v. Christie</u>, 624 F.3d 558, 567 (3d Cir. 2010).

officer and an eyewitness to the crime, identified Hodge and testified as to the basis of her knowledge of Hodge's identity. She stated that when she first saw Hodge at the shopping center, she noticed him because she knew him to be someone who frequented the area, and that she recalled thinking he may have obtained employment. Admission of this testimony was not erroneous as it increased the probative value of Schneider's correct identification of Hodge, which was also the critical issue of fact in this case. Moreover, even if admission of the testimony were in error, the error was not plain because it was not "clear or obvious, rather than subject to reasonable dispute." Puckett, 556 U.S. at 135.

Relatedly, the prosecutor's reiteration of Schneider's testimony during closing statements does not constitute a basis for reversal. Nothing that the prosecutor said fell outside the scope of Schneider's testimony, and re-presentation of the testimony was not inappropriate in this case. Indeed, it is fundamental that counsel presenting a summation is free to repeat the evidence and even "argue reasonable inferences from the evidence," as long as counsel refrains from misstating the evidence. United States v. Fulton, 837 F.3d 281, 306 (3d Cir. 2016) (quoting United States v. Carter, 236 F.3d 777, 784 (6th Cir. 2001)). Hodge has not demonstrated any plain error, and therefore this claim fails.

B.

Hodge next argues that there was insufficient evidence of premeditation to convict him of Counts 3 and 6, firearms offenses under 18 U.S.C. § 924(c) and 14 V.I.C. § 2253(a), respectively. Both Counts 3 and 6 contain as the predicate

39

offense the crime of violence of attempted murder. Hodge was acquitted of Count 5 (attempted first degree murder of Powell).

When faced with a sufficiency-of-the-evidence challenge, "[w]e review the evidence in the light most favorable to the government. We do not reweigh the evidence or assess witness credibility." United States v. McKee, 506 F.3d 225, 232 (3d Cir. 2007). Therefore, "our inquiry is limited to determining whether the jury's verdict is permissible." Id. at 233. To do so, we ask whether "a rational trier of fact could have found [the] defendant guilty beyond a reasonable doubt, and the verdict is supported by substantial evidence." Id. at 232 (alterations in original) (quoting United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995)).

Hodge's challenge focuses exclusively on the sufficiency of the trial evidence as to the element of premeditation in the attempted murder predicate of the firearms offenses in Counts 3 and 6. He argues the trial evidence does not support that he "planned and reflected" on a killing. Hodge Br. 61 (quoting Brown v. People, 54 V.I. 496, 507 (2010)). We disagree. Premeditation is almost always proven through circumstantial evidence. In this case, the jury could have reasonably inferred premeditation from Hodge's preparation and use of a firearm.[15] Indeed, in Brown, the court held:

---

[15] Evidence that Hodge sought to conceal his involvement in the attempted murder and robberies by hiding in the bushes and shedding his clothing also support the verdict. Contrary to Hodge's contention, we have held that conduct after the commission of a crime can support a finding of premeditation. See Gov't of the V.I. v. Roldan, 612 F.2d 775, 782 (3d Cir.

40

It is not required, however, that the accused shall have brooded over his plan to kill or entertained it for any considerable period of time. Although the mental processes involved must take place prior to the killing, a brief moment of thought may be sufficient to form a fixed, deliberate design to kill.

Brown, 54 V.I. at 507 (emphasis omitted) (quoting Gov't of the V.I. v. Martinez, 780 F.2d 302, 305 (3d Cir. 1985)); see also Gov't of the V.I. v. Charles, 72 F.3d 401, 411 (3d Cir. 1995) ("A brief moment of thought can be sufficient. Based on the use of a knife and the absence of any provocation or display of emotion by [the defendant], the jury could reasonably infer that [the defendant], in this brief moment, formulated a deliberate intent to kill [the victim].").

For these reasons, Hodge's sufficiency-of-the-evidence challenge fails.

## VI.

Hodge also challenges several components of the jury charge. First, Hodge argues that the jury instructions as to Counts 3 and 6 were erroneous because in describing the predicate offense of attempted murder, the District Court did not give a separate definition of attempted murder, did not specifically reference Counts 5 and 12 as the predicate crimes, and did not reference specific victims. In the alternative, he

---

1979) (noting that evidence that the defendant attempted to conceal the victim's body and the murder weapon and lied to law enforcement supported a verdict of premeditated murder).

argues that even if the jury instructions on Counts 3 and 6 were adequate, the instructions on Count 5 were insufficient because they did not contain a definition of "willfully" or "deliberately."

Hodge contends that the District Court erred by providing confusing jury instructions for Counts 3 and 6. He principally argues that the District Court (1) did not give a definition of attempted murder when discussing the elements of these offenses which were predicated on attempted murder, (2) did not reference where in the Information the attempted murder charge could be found, and (3) did not specify to which victim these attempted murders referred.

Hodge has failed to identify any error.[16] The District Court defined attempted murder when instructing the jury on Counts 5 and 12 and was not required to repeat the definition each time attempted murder was mentioned as an element of a crime. A jury is presumed to follow the instructions given by the judge, Richardson v. Marsh, 481 U.S. 200, 211 (1987), and as such, we presume the jury followed the District Court's instructions as to attempted murder in both its direct iteration in Counts 5 and 12 as well as upon successive reference in other counts.

The second and third arguments are also without merit, and we identify no error in the Court's instructions. The District Court's instructions for Count 3 and 4 (§ 924(c) counts

---

[16] Moreover, as the District Court noted, Hodge did not raise these objections at trial. See D. Ct. Op. (D. Ct. Dkt. 101, Apr. 15, 2016) at 33; Hodge Mot. to Vacate, (D. Ct. Dkt. No. 89, Jun. 24, 2015) at 2.

based on the attempted murders of Powell and Bougouneau, respectively) specified that the Government must prove that "the defendant committed an attempted murder as charged in either Counts 5 or 12 of the information." App. 90. While the District Court repeated the instructions for Counts 3 and 4 moments later and did not refer to Counts 5 and 12 in the second reading, the totality of the instructions gave jurors sufficient guidance based on the law. United States v. Leahy, 445 F.3d 634, 642 (3d Cir. 2006) ("[W]hen we consider jury instructions we consider the totality of the instructions and not a particular sentence or paragraph in isolation." (quoting United States v. Coyle, 63 F.3d 1239, 1245 (3d Cir. 1995))), abrogated on other grounds by Loughrin v. United States, 134 S. Ct. 2384 (2014).

Similarly, although the District Court did not again refer to Counts 5 and 12 in giving instructions for Counts 6 and 13 (14 V.I.C. § 2253(a) firearms counts based on the attempted murders of Powell and Bougouneau, respectively), Hodge has identified no authority requiring that the court do so. There was only evidence of two victims of attempted murder, and Hodge was prosecuted for the attempted murders of both. The Counts in the Information where the attempted murders were charged were already stated to the jury. We therefore conclude that Hodge's challenges to the jury instructions for Counts 3 and 6 are meritless.

A.

Hodge argues in the alternative that the jury instructions for Count 5 (attempted murder of Powell) should have contained definitions of "willful" and "deliberate" in order for the jury properly to convict him on Counts 3 and 6, the firearms

offenses predicated on attempted murder. He acknowledges that the District Court did define "premeditated," but alleges error in the failure to define "willful" and "deliberate."[17]

This argument does not survive plain error review. Even if we assume the premise that the District Court committed error in not defining those two terms, we could not characterize such error as plain or affecting substantial rights. Gov't of the V.I. v. Rosa, 399 F.3d 283, 293 (3d Cir. 2005). It is hard to reconcile how a crime could be premeditated — "conceive[d] the design or plan to kill" — and not be "deliberate" or "willful" about the act of attempted killing. In other words, when viewed in its totality, the jury instructions provided jurors with sufficient basis for evaluating the elements of attempted murder with the proper understanding of the element of intent required for conviction.

Hodge is correct that we have defined deliberateness with more detail in the past. Martinez, 780 F.2d at 305 ("A deliberate killing is one which has been planned and reflected upon by the accused and is committed in a cool state of the blood, not in sudden passion engendered by just cause of provocation." (quoting Gov't of the V.I. v. Lake, 362 F.2d 770, 776 (3d Cir. 1966)). However, in this case there is no evidence regarding provocation or sudden passion. Therefore, the District Court's decision to omit that language was not plainly erroneous.

---

[17] Hodge appears to also make the same argument as it relates to Count 4 (§ 924(c) charge predicated on attempted murder of Bougouneau) and Count 12 (attempted murder of Bougouneau). Since Hodge was acquitted of both those counts, we do not address them here.

## VII.

For the reasons stated above, we will affirm the District Court's judgment of conviction and sentence on Counts 1, 2, and 3. We will also affirm the District Court's judgment and commitment, except that we will remand to the District Court to vacate two of the three offenses charged in Counts 6, 7, and 8.