**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2882
_____

UNITED STATES OF AMERICA

v.

JEFFREY MILLER,
                                         Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. Crim. No. 3-16-cr-00270-001)
District Judge: Honorable Richard P. Conaboy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 24, 2018

Before: AMBRO, SCIRICA, and SILER, JR.[*], *Circuit Judges*

(Opinion Filed: April 26, 2018)

_____

OPINION[**]

_____

[*] Honorable Eugene E. Siler, Jr., United States Court of Appeals for the Sixth Circuit, sitting by designation.
[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

In this tax fraud and evasion prosecution, the District Court appointed the Federal Public Defender to represent Appellant Jeffrey Miller. Pursuant to a negotiated plea agreement, Miller pleaded guilty to a two-count Information charging him with willful failure to pay his employees' payroll taxes and to file an individual tax return. *See* 26 U.S.C. §§ 7202–7203. As Miller's appointed counsel, the Federal Public Defender successfully obtained five continuances of Miller's sentencing over the span of some seven months. Miller then hired his own lawyer, who entered an appearance and requested a sixth continuance on the eve of the final sentencing date. Understandably frustrated by this last-minute request and Miller's apparent protraction, the Judge denied the request and required Miller to proceed to sentencing with appointed counsel. He appeals, arguing this decision violated his Sixth Amendment right to retained counsel of his choice. U.S. Const. amend. VI. We will affirm.

## I.

Jeffrey Miller failed to truthfully account for and pay over payroll taxes for employees of his business, JMSI Environmental Corporation, from its founding in 2005. This prompted a 2009 investigation, which revealed that Miller withheld employment taxes from employees and gave them Forms W-2 but failed to submit the information or pay the withheld taxes to the IRS. Although Miller subsequently filed returns for 2005 and 2006, he persisted in failing to pay taxes to the IRS. Indeed, as of Miller's sentencing in August 2017, the IRS had no record of Miller making any payment toward his employment taxes in over a decade, between the first quarter of 2006 and the last

2

quarter of 2017. Miller also failed to file individual income tax returns for at least the years 2008 through 2011. IRS agents approached Miller in 2015, and he cooperated, assisting them with separating his commingled business and personal expenses. Because of Miller's refusal to comply with the tax laws, the Government could not quantify Miller's total tax liability with precision, but it estimated its loss was approximately $646,897 before penalties or interest.

In the summer of 2016, Miller's appointed counsel, the Federal Public Defender, negotiated a plea agreement with the Government, under which Miller agreed to pay up to $374,512 in restitution to the IRS. Pursuant to the plea agreement, on September 16, 2016, the Government filed an Information charging Miller with one count of willful failure to truthfully pay over his employees' withholding and Federal Insurance Contributions Act taxes between January 1, 2010 and April 30, 2013, 26 U.S.C. § 7202, and one count of willful failure to file an income tax return for tax year 2010, *id.* § 7203. On October 12, 2016, Miller pleaded guilty to both counts of the Information.

Sentencing was initially scheduled for January 11, 2017. But on December 21, 2016, appointed counsel requested a continuance because she needed additional time to review Miller's presentence investigation report. The Government concurred, and the District Judge continued sentencing to February 22, 2017. On February 13, appointed counsel again requested a continuance so that she could review revisions to the PSR and prepare a sentencing memorandum. The Government again concurred, and the District Judge continued sentencing to March 31.

But on March 27, just days before sentencing, appointed counsel requested a third

3

continuance. Counsel claimed Miller "had put in place procedures to insure [sic] that tax deposits w[ould] be made . . . at each payroll period," was "working to acquire funds to repay the IRS," and "believe[d] that within 60 days he w[ould] be current with payroll taxes and w[ould] be prepared to make a significant restitution payment." App. 98. Significantly, counsel also represented Miller "w[ould] not request any additional continuance." *Id.* The Government did not join in this request, but the District Judge nonetheless continued sentencing to June 15.

On June 9, appointed counsel requested a fourth continuance because she had received new information from the Government. Because the Government and Probation Office also needed more time to prepare, they joined in this request, and the District Judge once again continued sentencing, this time to July 25.

On July 18, appointed counsel filed a sentencing memorandum on Miller's behalf, requesting that the District Judge grant a variance below the advisory sentencing Guidelines of 18 to 24 months' imprisonment. Then on July 24—the day before sentencing—counsel requested a fifth continuance. Counsel claimed that "Miller w[ould] be filing back tax returns within the day," "hope[d] to be able to make a restitution payment at sentencing," and "w[ould] provide counsel with important sentencing information that day." App. 116–117. Because the request came so late, the Government could not be reached, but the District Judge nonetheless continued sentencing to August 15.

On August 11, Miller met with James J. Haggerty, Esq., a civil lawyer whom he decided to hire. The next day, Haggerty met with appointed counsel to discuss a plan for

4

transferring the representation. On August 14—the day before sentencing—Haggerty filed an entry of appearance on behalf of Miller. He also moved for a sixth continuance, representing he would be out of the country on the day of sentencing and required additional time to prepare. The Government objected to this request. Later that day the Government filed its sentencing memorandum, requesting a sentence within the Guidelines range. The Government revealed that, despite Miller's earlier representations to the District Judge, he had done "little if anything to resolve any of the current tax liabilities he ha[d] with the Internal Revenue Service." App. 130. According to the Government, during the seven months in which sentencing was continued, Miller "continued to operate his business without remitting the taxes he held from employee's paychecks." App. 129. There were "still personal income tax returns and employment tax returns outstanding," App. 129–130, and Miller had failed to comply with the terms of his plea agreement requiring him to file all delinquent personal income tax returns for 2012 through 2016.

The Government also revealed that, in addition to his failure to comply with the tax laws and the terms of his plea agreement, Miller engaged in other acts of dishonesty respecting his guilty plea and the restitution he owed to the IRS. In December 2016, two months after pleading guilty, Miller filed for Chapter 13 bankruptcy but failed to disclose either his guilty plea or his outstanding tax liability. And in February 2017, Miller signed a statement representing that he was not under investigation by any government agency in order to obtain a sales contract from a customer receiving government funds.

On August 15, Miller appeared for sentencing with appointed counsel. At the

5

outset of the hearing, the District Judge denied the continuance request:

> Now, just yesterday afternoon I want the record to reflect that I have a motion to continue the sentencing hearing in this case. And that motion was filed by Attorney James J. Haggerty. . . . Mr. Haggerty indicated that he had entered his appearance to represent you on the same day, yesterday. And I want the court to know that—I want to reflect on the record that I'm going to deny that motion to continue this case. You'll have the absolute right to have whatever lawyer you want to represent you. But you cannot ask for a hearing. A lawyer has no right to ask for a continuance of a case at the last minute. And I'm going to deny that motion to continue, because this case has been continued a number of times, and in all fairness to all other parties concerned, and especially the United States Government, since this is an income tax case I'm denying that motion to continue.

App. 143–144. Later in the hearing, appointed counsel raised an objection, arguing that retained counsel was better suited to help Miller sell his business to obtain funds for restitution. The Judge further explained his rationale for denying the continuance:

> You have a right to hire counsel, any counsel you wish personally to represent you. And Mr. Haggerty can certainly continue to represent you if you wish him to do so. And I understand he has entered a—in this case an indication that he is representing you. . . . I've not denied any indication of him—of Mr. Haggerty that he wants to represent you. That's up to you and him. But I'm not—I will not continue this hearing this morning for a number of reasons, not the least of which that it has been continued over and over again, and you have failed completely to live up to the reasons why—and the case was continued in the past. . . . . You've done everything in the world legally but pay the tax that you owe. And it's for those reasons I'm denying the motion to continue.

App. 151–152.

During his allocution, Miller explained that his intention in hiring Haggerty was "to put together a team to help sell the business [and] to provide additional character witnesses." App. 160–161. Miller told the Judge he "should have had more of an opportunity to prepare [character testimony], to be able to bring in . . . letters from [his] children, letters from [his] children's friends' parents that . . . [he took] to the movies or

6

d[id] stuff like that with." App. 161. He also explained that he was "trying to get everything lined up to be able to make restitution for the government," which "takes time." App. 161. At no point did Miller express dissatisfaction with appointed counsel or her performance.

The Judge sentenced Miller to 18 months' imprisonment—the bottom end of the Guidelines range—and ordered restitution in the amount of $374,512.09. He also delayed imposition of sentence for 30 days so that Miller could, among other things, "try to put together some of the money to pay what [he] owed the Government in this case." App. 166. On August 28, 2017, Miller timely appealed.

Despite the District Judge's statement that Haggerty could represent Miller going forward, Miller continued to use appointed counsel. On September 13, 2017, that counsel requested a ten-day continuance of Miller's voluntary surrender date so Miller could get his affairs in order. The District Judge granted the motion that same day.

## II.[2]

The Sixth Amendment provides a criminal defendant the right to be assisted by counsel of choice. U.S. Const. amend. VI. Miller contends his Sixth Amendment rights were violated because the Judge denied his request for a continuance so he could proceed with retained counsel. We review a sentencing judge's denial of a continuance for abuse of discretion. *See United States v. Hodge*, 870 F.3d 184, 202 (3d Cir. 2017). Where the judge's discretionary power to deny a continuance comes into conflict with the defendant's choice of counsel, we apply "a balancing test to determine if the trial judge

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

7

acted fairly and reasonably." *Hodge*, 870 F.3d at 201 (quoting *United States v. Kikumura*, 947 F.2d 72, 78 (3d Cir. 1991)). Factors to be considered include "the efficient administration of criminal justice; the accused's rights, including an adequate opportunity to prepare a defense; and the rights of other defendants awaiting trial who may be prejudiced by a continuance." *United States v. Kikumura*, 947 F.2d 72, 78 (3d Cir. 1991).

"While a 'myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality,' the Supreme Court has stated that denying a request for a continuance constitutes an abuse of discretion only when it is 'so arbitrary as to violate due process.'" *Id.* (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). "Thus a court, considering all of the facts of a particular case, may refuse to grant a continuance even if to do so results in the deprivation of defendant's chosen counsel." *Id.* (citing *Paullet v. Howard*, 634 F.2d 117, 119 (3d Cir. 1980)). "While it is desirable that a defendant be represented by the counsel of his choice, that goal is sometimes outweighed by the 'equally desirable public need for the efficient and effective administration of criminal justice.'" *Id.* (quoting *Paullet*, 634 F.2d at 119).

"The ability to choose counsel is a right and proper tool of the defendant; it cannot be used merely as a manipulative monkey wrench." *United States v. Rankin*, 779 F.2d 956, 958 (3d Cir. 1986) (internal quotation marks and citation omitted). "A defendant will not be permitted to subvert judicial proceedings or cause undue delay by designating a certain lawyer. . . . Nor must a court honor a belated request made not in good faith but

8

as a transparent ploy for delay." *Id.* (citing *Morris v. Slappy*, 461 U.S. 1, 13 (1983)).

In the present case, we cannot say that the District Judge's decision to deny Miller's sixth continuance request was an abuse of discretion. At sentencing, Miller explained to the Judge that he wanted Haggerty to help him sell his business and obtain funds to repay the IRS, which "takes time." But Miller—who was free on his own recognizance throughout the proceedings—knew for at least one year that he would be pleading guilty to these offenses and would owe the IRS significant restitution. He apparently took no steps to obtain private counsel or repay the IRS during this time. *Cf. Kikumura*, 947 F.2d at 79 (affirming denial of continuance where incarcerated defendant "had a full month to find new private counsel," which was "a reasonable amount of time in which to arrange for such counsel's appearance at [his] resentencing"). Nor are we persuaded by Miller's statement to the Judge that he needed more time or a new lawyer to obtain letters from his children or their friends' parents. Miller presented the Judge with no justifiable reason for this untimely request.

Indeed, the Judge had ample reason to believe that Miller's sixth request—which came on the eve of sentencing—was nothing more than an attempt to unduly delay the proceedings. In denying the request, he noted Miller had previously requested continuances so he could make restitution, but that he had repeatedly failed to live up to those promises. In light of these failures and Miller's ongoing noncompliance with the tax laws and other dishonest behavior, it was not unreasonable for the Judge to discredit Miller's rationale for a sixth continuance. He found the efficient administration of criminal justice and fairness to the Government outweighed Miller's last-minute request

9

to further prolong the proceedings. We do not believe the stated rationale was so arbitrary as to constitute an abuse of discretion.

Nor is there any indication that Miller was dissatisfied with appointed counsel such that the Judge erred in requiring her to represent Miller at sentencing. At no point did Miller make any allegation that appointed counsel's performance was deficient. On the contrary, a month after sentencing, Miller requested a continuance of his voluntary surrender date through appointed counsel. That Miller continued with appointed counsel rather than Haggerty—whom the Judge said would be allowed to represent Miller going forward—only further suggests that the basis for the sixth continuance request was a contrivance.

## III.

For the foregoing reasons, we will affirm the August 16, 2017 Judgment and Commitment Order.