**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2646
_____

MARNIE O'BRIEN,
Appellant

v.

THE MIDDLE EAST FORUM; DANIEL PIPES; and
GREGG ROMAN;

v.

MATTHEW EBERT
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-06078)
District Judge:  Honorable John M. Gallagher
_____

Argued June 22, 2022

Before: McKEE,* RESTREPO, and BIBAS *Circuit Judges*

(Filed: January 5, 2023)
_____


Erica A. Shikunov                    [ARGUED]
Samuel C. Wilson
Derek Smith Law Group

_____

* Judge McKee assumed senior status on October 21, 2022.

1835 Market Street
Suite 2950
Philadelphia, PA 19103
　　　*Counsel for Appellant*

Jonathan R. Cavalier　　　　　　　[ARGUED]
Jackson Lewis
1601 Cherry Street
Suite 1350
Philadelphia, PA 19102

Margaret M. DiBianca
Clark Hill
824 Market Street
Suite 710
Wilmington, DE 19801
　　　*Counsel for Appellees Middle East Forum; Daniel Pipes; and Gregg Roman*

Matthew Ebert
354 Pixley Place
Woodbury, NJ 08096
　　　*Pro se*

Chelsea Sharon　　　　　　　　　　[ARGUED]
Equal Employment Opportunity Commission
Office of General Counsel
131 M. Street, N.E.
Washington, DC 20507
　　　*Counsel for Amicus Appellant Equal Employment Opportunity Commission*

_____

OPINION OF THE COURT
_____


McKEE, *Circuit Judge*.

Marnie O'Brien appeals the District Court's order denying her motion for a new trial after a jury found in favor

of her former employer on her hostile work environment claims under Title VII of the 1964 Civil Rights Act.[1] In Title VII cases where no tangible adverse employment action was taken, an employer may escape liability by raising an affirmative defense under the Supreme Court decisions in *Faragher v. City of Boca Raton*,[2] and *Burlington Industries, Inc. v. Ellerth.*[3] The District Court held that O'Brien was not entitled to a jury instruction that this defense is unavailable where the harasser functions as the alter ego or proxy of the employer. Although we agree that this affirmative defense is not available in that situation, the District Court's refusal to so instruct the jury here was harmless because the jury found that O'Brien was not subjected to sexual harassment. The existence of an affirmative defense was therefore irrelevant. Accordingly, we must affirm the District Court's order denying O'Brien's motion for a new trial.

## I.    FACTUAL BACKGROUND

Marnie O'Brien worked at The Middle East Forum, a think tank, from 2016 to 2020. She served as its controller and

---

[1] 42 U.S.C. § 2000e et seq.
[2] 524 U.S. 775 (1998).
[3] 524 U.S. 742 (1998).

was responsible for human resources tasks such as payroll and onboarding staff. In 2019, O'Brien brought this suit against The Middle East Forum, its President Daniel Pipes, and its Director Gregg Roman. She alleged a hostile-work environment under Title VII and the Pennsylvania Human Relations Act. Defendant Roman asserted a counterclaim for abuse of process.

The claims were resolved by a jury trial in which the jury returned a verdict against O'Brien on her Title VII and PHRA claims. It also rejected Roman's abuse of process counterclaim.

## A. Trial Testimony

During the trial, O'Brien testified that she had experienced ongoing sexual harassment at the hands of Gregg Roman, who was her direct supervisor and the Forum's Director, Chief Operating Officer, and Secretary of the Board. She painted a grim picture of her treatment, testifying that Roman made repeated sexual advances toward her and some female co-workers. She told the jury that he used his position of authority to retaliate against women who rejected his unwanted sexual advances. Other female employees corroborated O'Brien's testimony. They told the jury that

4

Roman also engaged in harassing behavior toward them. Roman denied all of the allegations.

Testimony during the trial focused on Roman's role in the company. According to some employees, he was "the face of the organization"[4] and the "man in charge."[5] As the Chief Operations Officer, not only was Roman responsible "for day-to-day management, communications, and financial resource development[,]"[6] he was also the decision-maker at the office. He created and implemented office policies and was "responsible for all of the administration oversight with anybody that worked at the Forum."[7] Although Pipes served as President of the Forum, Roman possessed significant decision-making authority. Pipes even conceded that there was "no question…[he] delegated…authority [to Roman]."[8] Roman also wrote articles and made media appearances on behalf of the Forum.[9] Nevertheless, Roman and Pipes rejected the

---

[4] App. 2603, 2486.
[5] App. 2486.
[6] App. 2864.
[7] App. 2486.
[8] App. 2882.
[9] There is some debate as to whether Roman made media appearances on behalf of the forum. Pipes testified that Roman did not make media appearances as a representative of the Forum but used his affiliation with the Forum during said appearances.

characterization of Roman as the "face of the company." Roman characterized his role on the Forum's Board as "that of secretary,"[10] and Pipes testified that he, not Roman, was the face of the Forum. Pipes told the jury that Roman "reported to [him], not every decision of course, but as in any organization, key decisions, such as hiring and firing."[11]

The jury also heard considerable testimony about Pipes' response after O'Brien reported Roman's alleged sexual harassment.[12]

### B. Instructions on the Faragher/Ellerth Defense and Verdict

O'Brien argued that the Forum should be barred from raising an affirmative defense to the hostile work environment claim under *Faragher v. City of Boca Raton* and *Burlington Industries, Inc. v. Ellerth* because Roman was a proxy of the employer-organization. In cases where no tangible employment action has been taken,[13] the *Faragher/Ellerth* defense allows an employer to escape vicarious liability if: (1) the employer exercised reasonable care to prevent and correct

---

[10] App. 2778-79.
[11] App. 2882.
[12] App. 1984-93, 2977.
[13] Examples of a tangible employment action include "discharge, demotion, or undesirable reassignment." *Faragher*, 524 U.S. at 808.

any harassing behavior; and (2) the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities provided.[14]

In her pretrial memorandum, O'Brien argued that Defendants were precluded from raising this affirmative defense because Roman was her employer's proxy. At the charging conference, O'Brien reiterated this point. She asked the Court to instruct the jury that, "if Mr. Roman is found to be a proxy or alter ego [of the company],…the inquiry ends there. The liability is automatic. [The defendants] do not get the *Faragher-Ellerth* defense."[15] However, the Court refused to deviate from our model jury instructions and declined a proxy-liability instruction over O'Brien's objection.

The Court instructed the jury as follows:

> I will now instruct you more fully on the issues you must address in this case. . . . As I just mentioned, Ms. O'Brien claims that she was subjected to harassment by Mr. Roman and that this harassment was motivated by her gender. The Middle East Forum, Dr. Pipes, and Mr. Roman are liable for the actions of Mr. Roman in Ms. O'Brien's claim of harassment if Ms. O'Brien proves all of the

---

[14] *Id.* at 807; *Ellerth*, 524 U.S. at 765.
[15] App. 3022 (alterations added).

7

following elements by a preponderance of the evidence. One, Ms. O'Brien was subjected to sexual harassment by Mr. Roman. Two, Mr. Roman's conduct was not welcomed by Ms. O'Brien. Three, Mr. Roman's conduct was motivated by the fact that Ms. O'Brien is a female. Four, the conduct was so severe or pervasive that a reasonable person in Ms. O'Brien's position would find Ms. O'Brien's work environment to be hostile or abusive… And, five, Ms. O'Brien believed her work environment to be hostile or abusive as a result of Mr. Roman's conduct. If any of the above elements have not been proven by a preponderance of the evidence, your verdict must be for the Defendants, and you need not proceed further in considering this claim.[16]

The Court added that if the jury found that the above elements had been proven by a preponderance of the evidence, then the jury should consider both whether: (1) Roman was O'Brien's supervisor; and (2) whether O'Brien was constructively discharged. The Court further instructed that if these two elements were proven, the verdict must be for Plaintiff, however, if the two elements were not proven, the jury must consider Defendants' affirmative defense.

---

[16] App. 3110–11.

The Court then informed the jury about the elements of the *Faragher/Ellerth* affirmative defense. It instructed that Pipes and the Forum could not be liable if: (1) Pipes and the Forum exercised reasonable care to prevent the harassment and promptly corrected any harassment that did occur; and (2) "O'Brien unreasonably failed to take advantage of any preventative or corrective opportunities provided by the Defendants."[17] Despite O'Brien's objection, the Court neither instructed the jury to consider whether Roman was in a sufficiently high position within the organization to qualify as the Forum's proxy, nor that if he did qualify as the proxy, the affirmative defense under *Faragher/Ellerth* would be unavailable.

The Court submitted the case to the jury with a general verdict form which asked, "Has the Plaintiff, Marnie O'Brien, proven by a preponderance of the evidence that she was subjected to sexual harassment by the Defendant, Gregg

---

[17] App. 3112–14.

Roman, and that this harassment was motivated by her gender?"[18] After deliberations, the jury responded: "No."[19]

This appeal followed.[20]

## II. DISCUSSION

Although O'Brien raises three issues on appeal, we need only discuss whether the District Court erred in refusing to instruct the jury on proxy liability pursuant to *Faragher* and *Ellerth*.[21]

---

[18] App. 3132. The same question was listed with respect to O'Brien's claim under Title VII and the Pennsylvania Human Relations Act.

[19] App. 3132, 3141. The jury also found that Roman had not proven his abuse of process claim against O'Brien.

[20] We have jurisdiction under 28 U.S.C. § 1291.

[21] We have reviewed O'Brien's claims that she was prejudiced by having to defend against Roman's abuse of process counterclaim and that the District Court abused its discretion in precluding the testimony of a non-party witness about sleeping with a knife under her pillow during a business trip because of her fear of Roman. Neither claim has merit.

The argument that O'Brien was prejudiced by having to defend against Roman's abuse of process counterclaim is waived because O'Brien failed to object to the jury instruction regarding appellee Roman's counterclaim in accordance with Fed. R. Civ. P. 51(c)(1) and failed to seek exclusion of evidence in support of Roman's counterclaim in her motions in limine. *See Lesende v. Borrero*, 752 F.3d 324, 335 (3d Cir. 2014) (reasoning that Fed. R. Civ. P. 51(c)(1) requires that a party objecting to a jury instruction or the lack thereof must raise an objection on the record or else that issue will be waived on appeal).

The District Court did not abuse its discretion in precluding the testimony of a non-party witness about sleeping with a knife under her pillow during a business trip

10

## A. Jury Instructions

---

because of her fear of Roman. "[S]o-called 'me too' evidence in an employment discrimination case is neither *per se* admissible nor *per se* inadmissible." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d. Cir. 2013) (citing *Sprint/United Mgmt. Co. v. Mendelsohn,* 552 U.S. 379, 388 (2008)). Moreover, "[w]e 'afford broad discretion to a district court's evidentiary rulings.'" *Id.* at 167-68 (quoting *Sprint/United Mgmt. Co.*, 552 U.S. at 384). Given that the District Court did not apply a *per se* rule excluding the evidence, which would have been an abuse of discretion, *see Sprint/United Mgmt. Co.*, 552 U.S. at 387, but instead engaged in a balancing test under Fed. R. Evid. 403, the District Court's ruling was proper, especially given that it did not deem any other testimony from the witness inadmissible prior to trial.

Nonetheless, we note that in *Mandel*, 706 F.3d at 168, the case upon which the District Court relied, the "me too" evidence that was excluded was partially excluded because the deposition testimony was that of two employees who were employed not by defendant employer but by defendant employer's parent corporation, whereas here, the witness was employed by the same company: the Forum. Moreover, in its opinion denying O'Brien's request for a new trial, the District Court reasoned, "Given that Ms. Barbounis was not a party to this case, that this alleged event occurred outside of Plaintiff's workplace (in another country), and because the inflammatory nature of this allegation constituted unfair prejudice which substantially outweighed any probative value with regards to Ms. O'Brien's case, the Court ruled that this testimony was inadmissible." *O'Brien v. Middle E. F.*, No. 2:19-CV-06078-JMG, 2021 WL 4132303, at *5 (E.D. Pa. Sept. 10, 2021). The District Court's reliance on the fact that Ms. Barbounis was in another country appears misguided considering that multiple employees, including O'Brien, testified that trips to Israel were part of their work responsibilities. Still, the District Court did not abuse its discretion.

While we generally review a court's refusal to give a requested jury instruction for abuse of discretion, "where, as here, the question is whether the jury instructions stated the proper legal standard, our review is plenary."[22] This standard applies regardless of whether the Court's instruction is consistent with our Model Civil Jury Instructions.[23] Those "instructions are designed to help litigants and trial courts, not to replace their shared obligation to distill the law correctly when drafting proposed jury instructions."[24]

O'Brien argues that the District Court erred in failing to instruct the jury that if it found Roman to be a proxy or alter-ego of the employer, the *Faragher/Ellerth* defense would be unavailable. We agree.

A review of the Supreme Court's reasoning in *Faragher* and *Ellerth* makes clear that the Supreme Court did not intend for the *Faragher/Ellerth* defense to be available where the

---

[22] *United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir. 1995) *see also Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336, 338 (3d Cir. 2005) ("Where a party properly objects to a jury instruction under Fed. R. Civ. P. 51, we exercise plenary review to determine whether the instruction misstated the applicable law.").
[23] *United States v. Maury*, 695 F.3d 227, 259 (3d Cir. 2012).
[24] *Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 190 (3d Cir. 2019).

supervisor responsible for harassment was a proxy for the organization-employer. In *Faragher,* the Supreme Court reviewed its prior case law on employer liability and drew a distinction between vicarious liability and proxy/alter ego liability.[25] The Court cited with approval its earlier decision in *Harris v. Forklift Systems, Inc.*, where it examined a corporation's liability for harassment by its president, reasoning that it was not "exceptional that standards for binding the employer were not in issue in *Harris* . . .[as] the individual charged with creating the abusive atmosphere was the president of the corporate employer who was indisputably within that class of an employer organization's officials who may be treated as the organization's proxy."[26] The Court also favorably cited cases in which courts reasoned that where harassment was perpetrated by a supervisor in a significant position of authority, liability would be automatically imputed to the employer.[27]

---

[25] *Faragher*, 524 U.S. at 786-92.

[26] *Id.* at 789 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993)).

[27] *Id.* at 789-90 (citing *Burns v. McGregor Elec. Indus., Inc.*, 955 F.2d 559, 564 (8th Cir. 1992) (employer-company liable where harassment was perpetrated by its owner); *Torres v. Pisano*, 116 F.3d 625, 634-35, 634 n.11 (2d Cir. 1997) (a supervisor may have a sufficiently high position "in the

Similarly, the Court in *Ellerth* outlined employer liability under agency principles.[28] The Court's analysis supported "indirect liability. . . where the agent's high rank . . . makes him or her the employer's alter ego."[29] However, the Court explained that it was not faced with such a situation in *Ellerth* because the harasser in question did not hold a high ranked position within the company.[30] Although the Court noted that "[n]one of the parties contend[ed] [that the alleged harasser's] rank imputes liability under this principle [of proxy liability]," it nonetheless acknowledged that liability could be imputed under this principle.[31]

In rejecting O'Brien's request for a charge that the affirmative defense did not apply if Roman was a proxy or alter-ego of the employer, the District Court reasoned that O'Brien "appears to conflate prior dicta discussing various agency theories, including the 'proxy theory,' with binding

---

management hierarchy of the company for his actions to be imputed automatically to the employer."); *Katz v. Dole*, 709 F.2d 251, 255 (4th Cir. 1983) ("Except in situations where a proprietor, partner, or corporate officer participates personally in the harassing behavior," an employee must "demonstrat[e] the propriety of holding the employer liable[.]")).

[28] *Ellerth*, 524 U.S. at 754-60.
[29] *Id*. at 758.
[30] *Id.*
[31] *Id.*

precedent establishing how employers may be held [liable] under Title VII."[32] However, that analysis ignores that, as the Court of Appeals for the Second Circuit astutely pointed out, *Faragher* and *Ellerth* "did not intend to depart from these well-established theories of employer liability in sexual harassment cases."[33] In fact, *Faragher* and *Ellerth* looked to the Supreme Court's prior decision in *Meritor Savings Bank, FSB v. Vinson*[34] as the foundation for determining employer liability.[35]  The *Faragher* Court affirmed the relevance of the "basic agency principles" discussed in *Meritor* to establish employer liability. The Court explained that "*Meritor's* statement of the law is the foundation on which we build today."[36] Similarly, in *Ellerth*, the Court reasoned that the "principles of agency law" established in *Meritor* were a useful

---

[32] *O'Brien*, 2021 WL 4132303, at *3.
[33] *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 52 (2d Cir. 2012).
[34] 477 U.S. 57 (1986).
[35] *Faragher*, 524 U.S. at 791 (explaining that the "soundness" of lower-court decisions "in light of basic agency principles … was confirmed by this Court's only discussion to date of standards of employer liability, in *Meritor*"); *Ellerth*, 524 U.S. at 755 ("As *Meritor* acknowledged, the Restatement (Second) of Agency . . . is a useful beginning point for a discussion of general agency principles.").
[36] *Faragher*, 524 U.S. at 791-92.

beginning point in a Title VII case.[37] As the Court of Appeals for the Second Circuit correctly concluded, "the *Faragher/Ellerth* affirmative defense builds upon rather than repudiates the theory of proxy/alter ego liability articulated in the Court's prior cases."[38]

This is made especially clear by the Court's effort to distinguish between Subsection 219(2)(a) of the Restatement (Second) of Agency, which addresses direct and indirect liability where the agent's position in the company makes him the employer's alter ego, from Section 219(2)(d) of the Restatement, which "concerns vicarious liability for intentional torts committed by an employee."[39] As the EEOC notes in the helpful amicus brief filed in this case, proxy liability does not stem from the aided-by-agency-relation principle of § 219(2)(d). That principle applies to situations where the servant independently "cause[s] harm because of his position as [an] agent[.]"[40] Instead, proxy liability under Title VII is rooted in § 219(2)(a), which addresses situations where

---

[37] *Ellerth*, 524 U.S. at 754.

[38] *Townsend*, 679 F.3d at 52.

[39] *Ellerth*, 524 U.S. at 758-59.

[40] EEOC Amicus Br. at 19 (quoting Restatement (Second) of Agency (1958) § 219, cmt. e.).

"the master" itself "intended the conduct or the consequences[.]"[41]

Thus, the District Court's focus on supervisory liability—instead of liability arising from the supervisor's status as "the master"—is misguided. The District Court relied upon the reasoning in *Vance v. Ball State University* that "it would go too far . . . to make employers strictly liable whenever a supervisor engages in harassment that does not result in a tangible employment action."[42] The District Court reasoned that, "[a]bsent a constructive discharge, or some other official act, 'the extent to which the supervisor's [mis]conduct has been aided by the agency relation ... is less certain' and justifies affording the employer an opportunity to establish an affirmative defense."[43] However, the Supreme Court has made it clear that there is no such uncertainty if the alleged harasser is in such a position of authority that he "speak[s] for the

---

[41] *Id.* at 19 (quoting Restatement (Second) of Agency (1958) § 219(2)(a)).
[42] *O'Brien*, 2021 WL 4132303, at *3 (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 430 (2013)).
[43] *Id.* (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148–49 (2004)).

corporate employer,"[44] and thereby merges with the employer-organization.

Following *Faragher* and *Ellerth*, every Circuit Court of Appeals that has addressed this issue has recognized the proxy-liability theory, holding the *Faragher/Ellerth* affirmative defense unavailable when the supervisor in question is the employer's proxy or alter ego.[45] These decisions comport with the EEOC's Enforcement Guidance, which recognizes that "[a]n employer is liable for unlawful harassment whenever the harasser . . . fall[s] 'within that class . . . who may be treated as

---

[44] *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 384 (5th Cir. 2003).

[45] *Townsend,* 679 F.3d at 53 ("[T]here was no error in the district court's conclusion that the *Faragher/Ellerth* defense is unavailable when the alleged harasser is the employer's proxy or alter ego . . . ."); *Ackel*, 339 F.3d at 383 ("[T]he employer is vicariously liable for its employees [sic] activities in two types of situations: (1) there is a tangible employment action or (2) the harassing employee is a proxy for the employer."); *Johnson v. West*, 218 F.3d 725, 730 (7th Cir. 2000) ("Vicarious liability automatically applies when the harassing supervisor is . . .'indisputably within that class of an employer organization's officials who may be treated as the organization's proxy . . . .'"); *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 517 (9th Cir. 2000) ("[T]he *Burlington* defense remains inapplicable as a defense to punitive damages when the corporate officers who engage in illegal conduct are sufficiently senior to be considered proxies for the company.").

the organization's proxy.'"[46] In that situation, the "unlawful harassment is imputed automatically to the employer" and "the employer cannot raise the [*Faragher/Ellerth*] affirmative defense, even if the harassment did not result in a tangible employment action."[47] We find convincing our Court's prior reasoning that this Enforcement Guidance "constitute[s] a body of experience and informed judgment to which [this Court] . . . may properly resort for guidance."[48]

Moreover, although we have not yet held that the proxy-liability theory automatically imputes liability to an employer, we have twice acknowledged the viability of that principle. In *Durham Life Insurance Company v. Evans*, we reasoned that the company at issue was not entitled to the *Faragher/Ellerth* defense because "the defense is only available in the absence of tangible adverse employment action" and the victim had

---

[46] EEOC Amicus Br. 14 (quoting EEOC Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors, 1999 WL 33305874, at *18 (June 18, 1999) (quoting *Faragher*, 524 U.S. at 789)).
[47] *Id.* at 14–15.
[48] *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1068 (3d Cir. 1996) (en banc) (quoting *Meritor*, 477 U.S. at 65); *see also Townsend*, 679 F.3d at 53 (finding persuasive the EEOC's interpretation that the *Faragher/Ellerth* defense is unavailable where the harasser is the employer's proxy).

suffered such an adverse action.[49] Nonetheless, we noted that there were "other bases for liability that are not relevant to our decision today [including] cases in which the harasser's high rank makes him the employer's alter ego."[50] Similarly, in *Suders v. Easton*, we acknowledged a possible basis for liability that was not relevant to the facts at issue there. We referred to: "cases in which the position of the harasser makes him an alter ego of the employer."[51] In light of this case law, we now join our sister Circuit Courts of Appeals and hold that the *Faragher/Ellerth* defense is unavailable when the alleged harasser is the employer's proxy or alter ego.[52]

---

[49] 166 F.3d 139, 144 (3d Cir. 1999).

[50] *Id.* at 152 n.8.

[51] 325 F.3d 432, 448 n.10 (3d Cir. 2003) *vacated on other grounds sub nom. Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004). The District Court reasoned that *Durham* and *Suders* do not support O'Brien's proposition that a proxy liability instruction should be provided. *O'Brien*, 2021 WL 4132303, at *2 n.2. Specifically, the Court noted that with respect to *Durham*, "this authority does not support the notion that the 'proxy theory' of liability, if proven, automatically precludes an employer from asserting an affirmative defense in Title VII cases" and in *Easton*, the Third Circuit "explicitly declined to further explore the proxy theory of liability within the Title VII context." *Id.* However, the District Court's analysis overlooks the fact that in both of these cases, the Third Circuit only declined to explore the proxy theory of liability because it was not relevant to the facts at issue. In contrast, proxy liability is relevant to the facts at issue here.

[52] As noted by O'Brien and the EEOC, district courts in this circuit have found the *Faragher/Ellerth* defense to be

## B. *Evidence that Roman was the Forum's Proxy or Alter Ego*

We conclude that the evidence in this case could support a finding that Roman was the Forum's proxy or alter ego. Accordingly, the District Court erred in overruling O'Brien's objection to instructing the jury on the availability of an affirmative defense under *Faragher/Ellerth*. We agree with the District Court's conclusion that merely serving as a supervisor with some amount of control over a subordinate does not establish proxy status.[53] However, as other Circuit Courts of

---

unavailable where the harasser qualifies as the employer's proxy. EEOC Amicus Br. at 16-17 citing *EEOC v. Donohue*, No. 2:09-CV-280, 2011 WL 4572020, at *21 (W.D. Pa. Sept. 30, 2011) (citing *Durham* and other cases for proposition that where alleged harasser is "an 'alter-ego' of the employer, liability is automatic and the *Faragher/Ellerth* defense is unavailable"); *Strauser v. Jay Fulkroad & Sons, Inc.*, No. 4:03-CV-2017, 2005 WL 2020636, at *8 (M.D. Pa. July 28, 2005) (reading *Durham* as having "recogniz[ed] [the] existence of [the] alter-ego theory of liability[,]" which if proven "would prevent defendant from relying on the *Ellerth/Faragher* affirmative defense"); *see also Lidwell v. Univ. Park Nursing Care Ctr.*, 116 F. Supp. 2d 571, 579 (M.D. Pa. 2000) (finding that "an employer's liability is rather straightforward" where alleged harasser qualifies as employer's proxy); *Griffin v. Allegheny Answering Serv., Inc.*, No. 04-1484, 2005 WL 8174538, at *8 (W.D. Pa. Nov. 1, 2005) *report and recommendation adopted*, 2005 WL 8174537 (W.D. Pa. Dec. 9, 2005) (if alleged harasser were proxy, "no affirmative defense would be available")).

[53] *See Townsend*, 679 F.3d at 56 ("[A]n individual's mere status as a supervisor with power to hire or fire is not

---

21

Appeals have explained, where "an official… [is] high enough in the management hierarchy that his actions 'speak' for the employer…he may be considered the employer's alter ego.'"[54] We recognize, of course, that "only individuals with exceptional authority and control within an organization can meet" this standard.[55] In *Townsend*, for example, the Court of Appeals for the Second Circuit found that the defendant served as his company's alter ego where, in the role of corporate vice president, he was "elevated in the corporate hierarchy," second in command only to the president, and "exercised managerial responsibility for day-to-day operations."[56]

Although the extent of Roman's authority was disputed at trial, a reasonable jury could find that Roman served as the Forum's alter ego or proxy. Roman served as the Chief Operating Officer, Director, and Secretary of the Board. The

---

sufficient to render that individual an alter ego of an employer.").

[54] *Helm v. Kansas*, 656 F.3d 1277, 1286 (10th Cir. 2011). *Accord Ackel*, 339 F.3d at 383–84. *See also Johnson*, 218 F.3d at 730 (looking to whether harasser's "actions 'spoke' for the [employer]").

[55] *Helm*, 656 F.3d at 1286.

[56] *Townsend*, 679 F.3d at 56. *See also Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1233 (10th Cir. 2000) (reasoning that alter ego instruction was warranted where harasser answered only to company president and was "the ultimate supervisor of all employees in the department. . . .").

jury heard testimony that—as in *Townsend*—he was second in command at the Forum, and was poised to "be the successor to become president of the organization."[57] There was testimony that his job was to "run[] the administration" of the organization; he was the "man in charge" of dictating policies for the day-to-day governance of the Forum's main Philadelphia office, and he was "responsible for all of the administration oversight with anybody that worked at the Forum."[58] The jury also heard testimony about his public-facing role which included making media appearances on behalf of the Forum. In light of the considerable evidence presented from which a jury could have found Roman to be a proxy for the Forum, the District Court erred in failing to instruct the jury that the *Faragher/Ellerth* defense would be unavailable if it found that Roman was a proxy for the Forum.

### C. Harmless Error

Given the District Court's erroneous jury instruction, a new trial is required unless "there is a high probability that the [erroneous instruction] did not affect the outcome of the

---

[57] App. 2773.
[58] App. 2486, 2886, 2941.

case."[59] As we noted at the outset, the failure to instruct on proxy liability was harmless here because the jury did not find that O'Brien had been sexually harassed by Roman. Accordingly, the affirmative defense under *Faragher/Ellerth* was irrelevant even though O'Brien was legally entitled to the charge she requested informing the jury that the defense did not apply if her harasser was the alter ego or proxy of her employer.

Here, the jury was first instructed to determine whether "Ms. O'Brien was subjected to harassment by Mr. Roman" and if it found that she was not, it "need not proceed further in considering this claim." The verdict form establishes that when asked whether O'Brien was subjected to sexual harassment by Roman, the jury responded "No." We assume that jurors "for the most part understand and faithfully follow [jury] instructions."[60] Therefore, we can only conclude that the jury determined that it need not consider any affirmative defenses because O'Brien had not established that she was subjected to

---

[59] *Woodson v. Scott Paper Co.*, 109 F.3d 913, 931 (3d. Cir. 1997).

[60] *Gov't of V.I. v. Rosa*, 399 F.3d 283, 297 (3d Cir. 2005) (citations omitted).

sexual harassment by Roman.[61] Accordingly, on this record, the failure to provide a proxy liability instruction was harmless.

## III. CONCLUSION

For the above reasons, we will affirm the District Court's order denying O'Brien's motion for a new trial.

---

[61] The verdict sheet refers solely to Defendant Roman and not to Defendants Middle East Forum and President Pipes. This was error given that O'Brien brought a lawsuit against all three Defendants. Nevertheless, O'Brien did not object to the verdict sheet, and we assume that the jury followed its directive to consider whether O'Brien was sexually harassed by Roman before proceeding further.