**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-3197
_____

UNITED STATES OF AMERICA

v.

KENNETH GRAHAM,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 2:21-cr-00645-001)
District Judge:  Honorable William J. Martini
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 13, 2024

Before: RESTREPO, MONTGOMERY-REEVES, and AMBRO, *Circuit Judges*.

(Opinion filed: January 30, 2025)

_____

OPINION*
_____

**MONTGOMERY-REEVES**, *Circuit Judge*.

   In January 2021, Kenneth Graham robbed a Boost Mobile store at gunpoint.  A

jury found him guilty of Hobbs Act robbery and brandishing a firearm during a crime of

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

violence.  *See* 18 U.S.C. §§ 1951(a) ("Count One"), 924(c)(1)(A)(ii) ("Count Two").

The District Court sentenced him to 330 months of imprisonment.  Graham timely

appealed.  Because Graham's arguments do not withstand scrutiny, we will affirm.

## I.    DISCUSSION[1]

Graham argues that we must reverse his conviction for four reasons: (1) the

District Judge should have recused himself from the case; (2) the District Court

improperly admitted evidence of drug possession under Federal Rule of Evidence 404(b);

(3) the District Court violated *Miranda v. Arizona*, 384 U.S. 436 (1966), by admitting

Graham's response to booking questions incident to arrest; and (4) the District Court

improperly charged the jury by (a) incorrectly defining "firearm" and (b) mentioning a

"bank robbery" when none occurred.  We address each argument in turn.

### A.    Recusal

First, Graham contends that the District Judge abused his discretion by not

recusing himself.[2]  Graham argues that the District Judge could not proceed impartially

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291.  "Because [Graham] was convicted after a jury trial, 'we must defer to the jury's verdict and view the evidence in the light most favorable to the [G]overnment. Therefore, we recount the [G]overnment's version of the facts.'" *United States v. Kolodesh*, 787 F.3d 224, 229 n.1 (3d Cir. 2015) (quoting *United States v. Serafini*, 233 F.3d 758, 763 n.4 (3d Cir. 2000)).

[2] "Where a motion for disqualification was made in the District Court, we review the denial of such a motion for abuse of discretion." *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 166 (3d Cir. 2004).

2

because he handled a prior criminal case involving Graham. Graham argues that the District Judge's impartiality became evident in two exchanges at a status conference.

In the first exchange, the District Judge addressed a letter sent by Graham expressing concern about why Essex County Jail held him in lockdown. The District Judge directed the U.S. Marshals to produce a report addressing the basis for Graham's detention status. After hearing from Graham, the District Judge explained that Graham "might have a little streak" that he "might not see." App. 30. The District Judge described that he saw "firsthand" Graham's failure to come to court and that if Graham did "things like that in the jail, there's a reason then why they deal with you in a different way." App. 31. The District Judge then repeated that he would investigate Graham's complaint.

In the second exchange, Graham's counsel raised an issue with his representation of Graham. Counsel stated that Graham "refused to speak or discuss his case" for two months before the hearing. App. 32. The District Judge explained to Graham that his counsel is "one of the most experienced lawyers" to handle the case. *Id.* The District Judge informed Graham that he could represent himself, but doing so would be against his best interest. The District Judge concluded by telling counsel that if Graham refused to cooperate going forward, then "we'll deal with him in a different way." App. 33.

Judges must recuse "in any proceeding in which . . . impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This standard is met when "a reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality . . . ." *Selkridge*, 360 F.3d at 167 (quoting *In re Prudential Ins. Co. of Am.*

3

*Sales Pracs. Litig.*, 148 F.3d 283, 343 (3d Cir. 1998)). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, *or of prior proceedings*, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (emphasis added).

We disagree that the District Judge abused his discretion by denying Graham's motion for recusal. Graham contends without support that the District Judge relied on extrajudicial sources when presiding over this case. Yet the only evidence in the record of a source outside the current proceeding is the prior criminal case handled by the District Judge. And knowledge from that prior proceeding is not a ground for recusal under *Liteky* unless the District Judge showed such deeply rooted antagonism that would make "fair judgment impossible." *Id.*

Neither comment meets that standard. As to Graham's detention status, the District Judge ordered a report, promised to investigate, and queried whether Graham could improve the situation by modifying his behavior. A reasonable person would understand that exchange as showing *impartiality*, not partiality. As to the representation issue, the District Judge recognized Graham's ability to proceed *pro se* while encouraging him to work and confer with his able counsel. Again, this exchange shows a jurist acting impartially to ensure that Graham received representation sufficient to protect his own rights and interests in the case. *Cf. United States v. Peppers*, 302 F.3d 120, 129 (3d Cir. 2002) (explaining how courts must ensure a defendant "understands

4

both the scope of the right sacrificed and the restrictions and challenges that he will face" before proceeding *pro se*).

## B.    Evidence of Drug Possession

Second, Graham argues that the District Court erred by admitting certain evidence at trial.[3]  During the investigation of the robbery of the Boost Mobile store, law enforcement officers identified the assailant's getaway vehicle.  When the officers located the vehicle and arrived to seize it, Graham got out of the car smelling of marijuana.  The officers searched Graham, found marijuana and heroin in his possession, and arrested him for possession of illegal drugs.

Before trial, the District Court denied Graham's motion to exclude evidence of his arrest for drug possession because it showed why detectives arrested and searched him, which related to the robbery.  But the District Court only allowed mention of marijuana possession, not heroin possession.  Graham argues that the District Court abused its discretion by admitting the evidence in violation of Federal Rule of Evidence 404(b).

Rule 404(b)(1) prohibits evidence of "any other crime, wrong, or act" to show that a defendant "acted in accordance with" that character, otherwise known as the propensity purpose.  But the same evidence may be admissible if offered for "a non-propensity purpose."  *Caldwell*, 760 F.3d at 276.  Evidence is admissible for a non-propensity

---

[3] "We review a district court's evidentiary rulings for an abuse of discretion." *United States v. Caldwell*, 760 F.3d 267, 274 (3d Cir. 2014).  But we exercise "plenary review over 'whether evidence falls within the scope of Rule 404(b).'" *Id.* (quoting *United States v. Smith*, 725 F.3d 340, 344–45 (3d Cir. 2013)).

purpose if the proponent shows that it "is (1) offered for a proper non-propensity purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 such that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested." *Id.* at 277–78.[4]

The District Court did not abuse its discretion under Rule 404. The evidence was relevant towards both a non-propensity purpose of law enforcement credibility and a non-propensity purpose of completing the narrative of the investigation. *See United States v. Green*, 617 F.3d 233, 247, 250 (3d Cir. 2010) ("[A]llowing the jury to understand the circumstances surrounding the charged crime—completing the story—is a proper, non-propensity purpose under Rule 404(b)" (collecting cases); explaining how evidence that would "improve [a witness's] credibility with the jury" is also a proper non-propensity purpose). And we find no abuse of discretion for the District Court's application of Rule 403, particularly where it tailored the evidence by limiting any mention of heroin. *See United States v. Vosburgh*, 602 F.3d 512, 537 (3d Cir. 2010) ("We will not disturb the District Court's ruling unless it was 'arbitrary or irrational.'" (quoting *United States v. Kellogg*, 510 F.3d 188, 197 (3d Cir. 2007))).[5]

---

[4] We note that the District Court issued a limiting instruction.

[5] Graham also suggests that, Rule 404(b) aside, the evidence was not relevant under Rule 401. But "the bar for what constitutes relevant evidence is low." *Forrest v. Parry*, 930 F.3d 93, 114 (3d Cir. 2019). And we have explained how, for example, "evidence concerning a witness's credibility is always relevant, because credibility is always at

6

### C.    *Miranda*

Third, Graham argues that the District Court erred by admitting evidence in violation of his *Miranda* rights.[6]  Over objection, the District Court admitted body cam footage showing Graham's answers to routine booking questions incident to arrest from a standard form administered by a law enforcement officer.  In the footage, Graham provided his height, weight, employment status, and telephone number.  This information was provided in response to routine booking questions and therefore falls under an exception to *Miranda*.  *See United States v. Bishop*, 66 F.3d 569, 572 n.2 (3d Cir. 1995) (recognizing the routine booking exception to *Miranda* and holding that a "police officer's question about [the defendant's] limp was part of the booking procedure designed to fulfill the government's obligation to provide medical attention").

Graham contends that the routine booking exception does not apply because the Government used the answers to incriminate Graham in the eyes of the jury.  But the issue is not whether booking questions led to incriminatory evidence at trial; it is whether

---

issue." *United States v. Repak*, 852 F.3d 230, 249–50 (3d Cir. 2017) (quoting *Green*, 617 F.3d at 251)).

Finally, Graham compares this case to *United States v. Morena*, 547 F.3d 191 (3d Cir. 2008).  But *Morena* concerned "systematic presentation of prejudicial drug evidence" that "constituted [prosecutorial] misconduct in violation of due process." *Id.* at 197. Graham does not explain—nor could he—how *Morena* has any application here.

[6] Whether the District Court properly applied the *Miranda* rule is a legal conclusion that we are free to re-examine, and this standard "does not change simply because the legal determination in a *Miranda* situation depends on the particular facts of each case." *United States v. Calisto*, 838 F.2d 711, 718 n.3 (3d Cir. 1988) (quoting *United States v. Mesa*, 638 F.2d 582, 591 n.3 (3d Cir. 1980)).

the questions were "designed to elicit" incriminating statements. *Pennsylvania v. Muniz*, 496 U.S. 582, 602 n.14 (1990); *cf. Rhode Island v. Innis*, 446 U.S. 291, 301 (holding that interrogation under *Miranda* refers to "any words or actions . . . that the police should know are reasonably likely to elicit an incriminating response" based on "the perceptions of the suspect"). Nothing about the questions here indicate any design to incriminate. And nothing apart from speculation indicates that the application of the standard questions here deviated in the context of Graham's particular arrest. We therefore hold that the District Court properly admitted the body cam footage under the routine booking exception to *Miranda*.

### D. Jury Instructions

Fourth and finally, Graham argues that the District Court improperly defined "firearm" for purposes of 18 U.S.C. § 924(c) and that it tainted the trial by mentioning "bank robbery" during the instructions.[7] Both arguments fail.

---

[7] We review "jury instructions to determine whether, 'taken as a whole, they properly apprized the jury of the issues and the applicable law.'" *United States v. Yeaman*, 194 F.3d 442, 452 (3d Cir. 1999) (quoting *Dressler v. Busch Ent. Corp.*, 143 F.3d 778, 780 (3d Cir. 1998)). Whether the District Court properly stated the legal standard is subject to plenary review. *O'Brien v. Middle E. F.*, 57 F.4th 110, 117 (3d Cir. 2023) ("While we generally review a court's refusal to give a requested jury instruction for abuse of discretion, 'where, as here, the question is whether the jury instructions stated the proper legal standard, our review is plenary.'" (quoting *United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir. 1995))). But our "review of the wording of the instruction, *i.e.*, the expression, is for abuse of discretion." *Yeaman*, 194 F.3d at 452. And we reverse "only if the instruction was capable of confusing and thereby misleading the jury." *Dressler*, 143 F.3d at 780 (quoting *United States v. Rockwell*, 781 F.2d 985, 991 (3d Cir. 1986)).

### 1. Definition of "firearm"

The District Court issued the following instruction to the jury about the definition of "firearm" for purposes of Count Two under 18 U.S.C. § 924(c)(1)(A)(ii):

> Now, the term firearm means any weapon which . . . will expel or is designed to, or may readily [be] converted to expel, a projectile, by the action of an explosive. The term firearm includes the frame or receiver of any such weapon.

App. 910 (mirroring Third Circuit's Model Criminal Jury Instruction § 6.18.922A-2).

Graham objected to this instruction at the charge conference. He argued that after *United States v. Hodge*, 870 F.3d 184 (3d Cir. 2017), the jury instructions must specify "that the firearm was a real one." App. 810. The District Court rejected that proposed phrasing, explaining that "[t]he charge, as it is right now, makes [that] clear. They have to be satisfied that it's a real gun, a fireable gun." *Id.* Graham repeats the same argument on appeal—that *Hodge* required including the proposed instruction that "it must be established that the firearm was a real one." Opening Br. 30.

Section 921(a)(3) defines "firearm" for purposes of § 924(c)(1)(A) as, among other things, "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive[, or] the frame or receiver of any such weapon . . . [.]" 18 U.S.C. § 921(a)(3). Contrary to Graham's suggestion, we have not held that a "real" gun somehow differs from the definition of "firearm" in 18 U.S.C. § 921(a)(3). In *United States v. Lake*, 150 F.3d 269, 271 (3d Cir. 1998), in determining the sufficiency of the evidence to a § 924(c)(1) conviction, a defendant argued that the evidence did not show that "he used or carried a 'firearm'

9

within the meaning of 18 U.S.C. § 921(a)(3)." Outlining the evidence, we explained that "a rational jury could find that the gun was real." *Id.* Then in *Hodge*, when conducting a Double Jeopardy analysis, we relied on *Lake* for the proposition that a jury must "find that the firearm was a 'real' one" to convict under § 924(c). 870 F.3d at 195 (first citing *Lake*, 150 F.3d at 271; and then citing *United States v. Beverly*, 99 F.3d 570, 572 (3d Cir. 1996)). But both *Hodge* and *Lake* describe—in a succinct way—how Congress defined "firearm" under 18 U.S.C. § 921(a)(3). As a result, the District Court did not improperly describe the applicable law by quoting the statutory definition of "firearm." And the District Court's particular *expression* of the law—that is, by defining it without explaining that the "firearm" must be "real"—was not an abuse of discretion.

### 2. Reference to "bank robbery"

During jury instructions, the District Court mistakenly referred to the underlying act as "bank robbery." App. 910. Graham's counsel alerted the District Court to the mistake, and it issued the following curative instruction: "My apologies, . . . I may have referenced to a bank robbery. This is not a bank robbery. That was my mistake. I guess I've had them in the past. You know, this is an alleged robbery of a [Boost Mobile] store. So that is all." App. 919. Graham contends that this mistaken reference had a "prejudicial effect on the jury [that] could not be cured as the bell could not be unrung." Opening Br. 31. We disagree.

In *United States v. Flores*, 454 F.3d 149, 158 (3d Cir. 2006), we considered a "one-word slip of the tongue" that resulted in shifting the burden of proof in a criminal case to the defendant, Flores. Because that slip of the tongue contradicted "repeated

10

references" to the correct burden of proof, we held that the instructions were "more than sufficient to dispel any possible misconception" and thus did not constitute plain error. *Id.* In so holding, we explained that Flores's counsel failed to object, and that failure left "us with the impression" that the mistake "was hardly noticeable." *Id.* And we noted that—if Flores's counsel did object—"the mistake could have been resolved immediately." *Id.*

What happened here is precisely the type of best practice discussed by this Court in *Flores*. The District Court misspoke, defense counsel pointed out the mistake outside the presence of the jury, and the District Court immediately issued a curative instruction explaining any reference to "bank robbery" was a slip of the tongue. And "we presume that the jury will follow a curative instruction unless there is an overwhelming probability that the jury will be unable to follow it and a strong likelihood that the effect of the evidence would be devasting to the defendant." *United States v. Newby*, 11 F.3d 1143, 1147 (3d Cir. 1993) (cleaned up). Nothing suggests that the jury was unable to follow the curative instruction. And nothing suggests the reference to "bank robbery" was so devasting to Graham such that the judgment must be set aside. We therefore hold that the District Court cured any error resulting from the mistaken reference to "bank robbery" by issuing the curative instruction.[8]

---

[8] Graham suggests that the reference to "bank robbery" is further indication of why the District Court should have recused. But like we explain above, nothing—including with knowledge of the reference to "bank robbery"—indicates "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.

11

**II.	CONCLUSION**

For the reasons discussed above, we will affirm the District Court's judgment.